# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRIDA KIMCA, and DERRICK SAMPSON individually and on behalf of all those similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>SPROUT FOODS, INC. D/B/A SPROUT ORGANIC FOODS and SPROUT NUTRITION,<br><br>      Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs Irida Kimca and Derrick Sampson, individually and on behalf of all those similarly situated, file this Complaint against the Defendant Sprout Foods, Inc. d/b/a Sprout Organic Foods and Sprout Nutrition ("Defendant" or "Sprout"), and hereby state:

## <u>NATURE OF THE ACTION</u>

1.      Sprout manufactured and marketed baby food products, representing and warranting that its baby food was safe and healthy, contained only a disclosed list of ingredients, and would provide nourishment and nutrition to infants and children.  Trusting Sprout's representations and warranties, parents and caregivers purchased Sprout's baby food products and fed them to their children.

2.      The Sprout baby food products at issue include, but are not limited to: Spinach Banana Apple; Sweet Potato White Beans; Apple Oatmeal Raisin; Mixed Berry Oatmeal; Carrot Apple Mango; Carrot Chickpeas Zucchini Pear; Strawberry Pear Banana; Butternut Blueberry Apple with Beans; Blueberry Banana Oatmeal; Apple Banana Butternut Squash; Sweet Potato Apple Spinach; Apple Blueberry; Butternut Chickpea Quinoa & Dates; Pumpkin Apple Red Lentil;

1

Market Vegetables Pears with Turkey; Garden Vegetables Brown Rice with Turkey; Sweet Pea Carrot Corn & White Bean; Harvest Vegetables Apricot with Chicken; Root Vegetables Apple with Beef; Creamy Vegetables with Chicken; Power Paks; Smoothies; Curlz; Wafflez; and Puffs.

3.      On February 4, 2021, parents and caregivers learned that the trust they had placed in Sprout was misgiven.  On that day, the United States House of Representatives issued a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" ("House Report").[1]

4.      The House Report confirmed that despite repeated requests from Congress, Sprout failed to respond or cooperate in the House inquiry "due to evasion or negligence."  Nevertheless, the House Report cited data from an independent report from 2019 confirming that Sprout products tested high in Arsenic, Lead, Cadmium and Mercury, all toxic heavy metals.[2]

5.      Despite the presence of toxic heavy metals in its food, Sprout never disclosed on the products' packaging and labels – the one place that every consumer looks when purchasing a product - that the products contain (or are at risk of containing) the presence of these toxins and continued to market its foods as "healthy, whole organic foods."[3]

6.      Sprout's deceptive representations and warranties resulted in tens of thousands of consumers purchasing Sprout baby food products that they thought were safe, nutritious and healthy, and instead were paying a premium for baby food products that were poisoning (or are risk of poisoning) their children.

---

[1] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[2] http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

[3] http://www.sproutorganicfoods.com/about-us/values-guarantee.

7.     The presence of (or risk of) unsafe levels of toxic heavy metals rendered the Sprout baby food products unfit for their intended purpose and uses, defective, and worthless, denying consumers the benefit of their bargain.

8.     Plaintiffs, individually and on behalf of all similarly situated individuals, seek damages including recovery of the money they paid for the worthless Sprout baby food products, and an order requiring Sprout to cease its deceptive marketing of its baby food products containing (or at the risk of containing)  unsafe levels of heavy metals and fully disclose the presence of toxins in its baby food products a the dangers posed by such contamination.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a state other than that of Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

10.     Venue is proper in this Court because the acts and omissions giving rise to this lawsuit took place in this District, Defendant Sprout maintains its principal place of business within the District and maintains significant business operations within the District.

## THE PARTIES

11.     Plaintiff Irida Kimca is a citizen of Connecticut and a resident of Orange, Connecticut.  Plaintiff Kimca purchased various Sprout products -- including but not limited to Sprout Organic Baby Food Stage 3, Creamy Vegetables with Chicken – for her child from 2017 to the date the House Report was released.  Some of the Sprout baby food products in Plaintiff Kimca's possession when the House Report was released include the following:



12.     Plaintiff Kimca purchased Sprout baby food products from various stores, including Shoprite, Stop & Shop, and Walmart locations in Milford, Connecticut, and Stamford, Connecticut. Prior to purchasing Sprout foods, she saw the nutritional claims on food packaging, which she relied on in deciding to purchase and feed Sprout food products to her child.  Plaintiff was not aware at the time of the purchases that the Sprout foods actually contained (or were at risk of containing) unsafe levels of toxic heavy metals.  If Plaintiff had known that at the time, she would not have purchased the Sprout foods.  As a result, through Sprout's misrepresentations and omissions, Plaintiff was induced to purchase Sprout foods that were essentially worthless, and worse, could harm her child.

13.     Plaintiff Derrick Sampson is a citizen of Illinois and a resident of Forest Park, Illinois.  Plaintiff Derrick Sampson purchased various Sprout products – including but not limited to Sprout Organic Baby Food Stage 2, Carrot Apple Mango, Sprout Organic Baby Food Stage 2,

Strawberry Pear Banana, and Sprout Organic Baby Food Stage 2, Sweet Potato Apple Spinach –

for his child from 2020 to the date the House Report was released.  Some of the Sprout baby food

products that were in Plaintiff's possession when the House Report was released include the

following:



      14.    Plaintiff Sampson purchased Sprout baby food products from various stores,

including Walgreens and Pete's Market located in Oak Park, Illinois.  Prior to purchasing Sprout

foods, he saw the nutritional claims on food packaging, which he relied on in deciding to purchase

and feed Sprout food products to his child.  Plaintiff was not aware at the time of the purchases that

the Sprout foods contained (or were at risk of containing)  unsafe levels of toxic heavy metals.  If

Plaintiff had known that at the time, he would not have purchased the Sprout foods.  As a result,

through Sprout's misrepresentations and omissions, Plaintiff was induced to purchase Sprout foods

that were essentially worthless, and worse, could harm his child.

      15.    Defendant Sprout Foods, Inc. is a Delaware corporation with its principal place of

business located at 50 Chestnut Ridge Road, Montvale, New Jersey 07645.  Sprout develops,

manufactures, markets, and sells foods and snacks for infants and toddlers.[4]

## FACTUAL ALLEGATIONS

### A. Plaintiffs

16.     Plaintiff Irida Kimca purchased various Sprout baby food products for her child from January of 2017 to the date the House Report was released.  Sprout baby food products purchased by Plaintiff Kimca include Sprout Organic Baby Food Stage 2, Apricot Banana Chickpea & Fig; Sprout Organic Baby Food Stage 2, Homestyle Vegetables & Pear with Chicken Broth; Sprout Organic Baby Food Stage 2, Mixed Berry Oatmeal; Sprout Organic Baby Food Stage 2, Butternut Blueberry Apples with Beans; Sprout Organic Baby Food Stage 2, Carrot Chickpeas Zucchini & Pear; Sprout Organic Baby Food Stage 2, Strawberry Apple Beet & Red Beans; Sprout Organic Baby Food Stage 2, Carrot Apple & Mango; Sprout Organic Baby Food Stage 2, Pear Kiwi Peas & Spinach; Sprout Organic Baby Food Stage 2, Sweet Potato Apple & Spinach; Sprout Organic Baby Food Stage 2, Blueberry Banana Oatmeal; Sprout Organic Baby Food Stage 2, Apple Oatmeal Raisin with Cinnamon;  Sprout Organic Baby Food Stage 2, Mixed Berry Oatmeal; Sprout Organic Plant Power Puffs, Apple Kale; Sprout Organic Baby Food Stage 3, Butternut Chickpea Quinoa & Dates; Sprout Organic Baby Food Stage 3, Sweet Pea Carrot Corn & White Bean; Sprout Organic Baby Food Stage 3, Creamy Vegetables with Chicken; Sprout Organic Baby Food Stage 3, Garden Vegetables Brown Rice with Turkey; Sprout Organic Baby Food Stage 3, Harvest Vegetables Apricot with Chicken; Sprout Organic Baby Food Stage 3, Market Vegetables Pear with Turkey; Sprout Organic Baby Food Stage 3, Root Vegetables Apple with Beef.

17.     These Sprout foods were purchased from Shoprite, Stop & Shop, and Walmart locations.  Plaintiff still possesses some of the products she purchased.

---

[4] http://www.sproutorganicfoods.com/about-us/company-history.

18.     Plaintiff Derrick Sampson purchased various Sprout baby food products for his child from May of 2020 to the date the House Report was released.   Sprout baby food products purchased by Plaintiff Sampson include:  Sprout Organic Baby Food Stage 2, Carrot Apple Mango, Sprout Organic Baby Food Stage 2, Strawberry Pear Banana, and Sprout Organic Baby Food Stage 2, Sweet Potato Apple Spinach, Apple Oatmeal with Raisins, Blueberry Banana Oatmeal, and Peach Oatmeal with Coconut Milk and Pineapples.

19.     Prior to purchasing the Sprout baby food products, Plaintiffs relied on Defendant's representations and warranties on the product packaging and labels, including the products' list of ingredients and promises of safe and nutritious baby food. For example:



20.     Plaintiffs were not aware at the time of the purchases that the Sprout baby food products contained (or were at the risk containing) dangerous, unsafe levels of toxic heavy metals. If Plaintiffs had known the true facts, they would not have purchased the Sprout baby food products, which were unsafe, dangerous to their children, and worthless.

21.     Plaintiffs have provided pre-suit notice to Defendant regarding the wrongful conduct

described herein and in response, Defendant has refused to provide any of the relief that is now

being requested. See notice letters attached hereto as Exhibit "A".

**B.  Sprout Foods**

22.         Sprout manufactures, sells, and distributes a variety of foods and snacks

using a marketing and advertising campaign centered around claims that appeal to health-conscious

consumers. For example, Sprout attempts to distinguish itself from other food brands by holding

itself out as only selling the healthiest, organic foods on the market.[5]



23.     In fact, Sprout makes a "Commitment"[6] to caregivers that its foods are made only

with:



24.     Sprout foods are divided into "stages" that are geared toward different age children.[7]

---

[5] https://shop.sproutorganicfoods.com/
[6] Id.
[7] *Id.*



25.     Sprout represents that its "Stage 2" foods, for children 6 months and older, contain only limited, organic ingredients.[8]

26.     Sprout's "Stage 3" foods, for children 8 months and older, are marketed as "nutrient-dense," "organic" and containing "free-range" and "pasture-raised" sources of protein.[9]

27.     Sprout represents that its "Toddler" foods are "wholesome," "packed with essential nutrients your toddler needs including Protein, Fiber, Omega 3 for brain development, and a Full Serving of Fruits or Veggies!"[10]

28.     Finally, Sprout's "Snacks," for children 8 months and older, are marketed as having "been recognized by parents and industry experts for outstanding flavor, sustainable protein sources, and dedicated to clean, organic ingredients."[11]

29.     Such representations and warranties reasonably induced Plaintiffs and other consumers to believe that Sprout baby food products were safe, healthy, and nutritious, and Plaintiffs and other consumers purchased them as a result.  Notably, none of Sprout's packaging or marketing materials warned that its baby food products contained (or at the risk of containing)

---

[8] https://shop.sproutorganicfoods.com/collections/stage-2.
[9] https://shop.sproutorganicfoods.com/collections/stage-3.
[10] https://shop.sproutorganicfoods.com/collections/toddler-1.
[11] https://shop.sproutorganicfoods.com/collections/snacks.

unsafe levels of dangerous toxic heavy metals known to harm the health and physiological and neurocognitive development of children.

30.     Sprout's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packing and labels themselves. However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the products contain (or are the risk of containing) unsafe levels of dangerous toxic heavy metals, substances known to have cause adverse health risks, effects and consequences when consumed especially by infants and children.

31.     Sprout falsely represented and warranted the contents, ingredients, safety, and nutritional value of the baby food products because Sprout knew that Plaintiffs and similarly situated consumers would never have purchased the Sprout baby food products to be fed to their children if truthful information had been provided. At all times, Sprout had a duty to provide only accurate and truthful representations, warranties, and information about its baby food products, and the aforesaid conduct breached that duty.  As a result, Plaintiffs and those similarly situated were economically harmed.

**C.  <u>The House Report</u>**

32.     The House Report concluded that baby food products contained unsafe levels of toxic heavy metals including arsenic, lead, cadmium, and mercury."[12]

33.     The House Report describes the background and genesis of the Subcommittee's investigation.  On November 6, 2019, having been made aware of reports of high levels of toxic heavy metals in baby foods, the Subcommittee requested internal documents and test results from

seven of the largest manufacturers of baby food products in the United States, including Sprout.[13]

34.     Four of the companies responded to the Subcommittee's requests, while three of the companies, including Sprout, failed to cooperate.[14]

35.     The House Report found Arsenic, Lead and Cadmium in the food of the four companies that cooperated with the Subcommittee investigation.  Additionally, only one of the four companies tested its foods for Mercury, and that company confirmed that its foods did contain Mercury.[15]

36.     The Subcommittee expressed "grave concerns about baby food products manufactured by…Sprout Organic Foods…[which] refused to cooperate with the Subcommittee's investigation."  Specifically, the Subcommittee was "greatly concerned that [Sprout's] lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products."[16]

37.     The Subcommittee advised that despite "numerous emails to executives and its general information email address, as well as numerous attempts to reach the Sprout central office by telephone, Sprout never responded or made contact with the Subcommittee."[17]

38.     The Subcommittee stated that "[w]hether due to evasion or negligence, Sprout's failure to respond raises serious concerns about the presence of toxic heavy metals in its baby foods, as even limited independent testing has revealed the presence of toxic heavy metals in its products."[18]

---

[13] *Id*. at 2.
[14] *Id*.
[15] *Id*. at 3-4.
[16] *Id*. at 5.
[17] *Id*. at 46.
[18] *Id*.

39.     The House Report also cited to an October 2019 independent report from Healthy Babies Bright Futures titled "What's in my baby's food?" ("HBBF Report")[19]

40.     The HBBF Report describes a sprawling investigation which tested a variety of different baby foods from most of the leading baby food manufacturers, including Sprout.[20]

41.     The HBBF Report provides the testing results[21] of numerous Sprout baby foods that were found to contain arsenic, lead, cadmium and/or mercury.

| Brand | Food | Food type | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) |
|-------|------|-----------|---------------------|--------------------------|------------|---------------|---------------------|
| Sprout | Organic Quinoa Puffs Baby Cereal Snack - Apple Kale | Snack - puffs, contains rice | 107 | 47 | 39.3 | 41.5 | 1.31 |
| Sprout | Prunes Organic Baby Food - 1 starting solids | Fruit - single - prune | 3.9 * | -- | 6.1 | < 0.5 | 0.245 * |
| Sprout | Carrot Apple Mango Organic Baby Food - 2, 6 months & up | Fruit and veggie - mixed | 6.1 | -- | 2.1 | 15.1 | < 0.131 |
| Sprout | Garden Vegetables Brown Rice with Turkey - for 8 months & up, Stage 3 | Meal | 7.2 | -- | 1.6 * | 2.5 | < 0.138 |

**D.  Dangers Posed by Heavy Metals**

42.     Heavy metals are naturally existing elements that have high atomic weight and a minimum density five times the density of water.  However, the term "heavy metals" is frequently used to describe both metals and metalloids, including for example arsenic, cadmium, lead, manganese, mercury, zinc, chromium and copper.

43.     The World Health Organization has declared that arsenic, cadmium, lead, and mercury are a "major public health concern."[22]

44.     The House Report explains, consistent with the scientific literature, that exposure to heavy metals in infants and children is particularly dangerous even in small amounts, and can lead

---

[19] https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf.
[20] *Id.*
[21] *Id.*
[22] https://www.who.int/ceh/capacity/heavy_metals.pdf.

to "untreatable and frequently permanent brain damage."[23]

45.     The House Report further explains, consistent with the scientific literature, that the known risks of arsenic include "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the Central nervous system and cognitive development in children."[24]

46.     The House Report references an independent study titled "Association of Arsenic, Cadmium and Manganese exposure with neurodevelopment and behavioral disorders in children" finding that arsenic exposure has a "significant negative effect on neurodevelopment in children."[25]

47.     The House Report states, consistent with the scientific literature, that:

    a.  cadmium is associated with decreases in IQ, and the development of Attention Deficit/Hyperactivity Disorder;[26]

    b.  lead exposure is associated with "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth," and the cognitive effects of early childhood lead exposure are believed to be permanent;[27]

    c.  there is a significant association between lead exposure and Attention Deficit/Hyperactivity Disorder;[28] and

    d.  "higher blood mercury levels at two and three years of age were positively

---

[23] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf. at 9-10.

[24] *Id*. at 10.

[25] *Id*. at 10.

[26] *Id*. at 12.

[27] *Id*. at 11.

[28] *Id*. at 12.

associated with autistic behaviors."[29]

48.     The findings in the House Report and the HBBF Report are fully consistent with the scientific literature, and on information and belief, Sprout knew or should have known that these significant risks existed throughout the time that Sprout designed, manufactured, marketed and sold its baby food products with (or at the risk of containing) unsafe levels of heavy metals.

**E.  Sprout's Knowledge of and Failure to Disclose Heavy Metal Contamination in its Foods**

49.     Despite the known risks of exposure to these heavy metals, Sprout negligently, recklessly, and/or knowingly sold its baby food products containing (or at the risk of containing) dangerous heavy metals without warning consumers like Plaintiffs.

50.     At all times relevant, Sprout knew or should have known the contents of its baby food products. Sprout also knew or should have known the contents of ingredients supplied by suppliers for inclusion in the baby food products.

51.     Upon information and belief, Sprout regularly tests the component ingredients and the finished products, and knew or should have known that they contained (or were at the risk of containing) dangerous heavy metals.  Sprout recklessly and with willful and wanton disregard of the rights and health of the those who purchased and consumed its baby food products, disregarded the unreasonable risks created by the presence of (or risk of) heavy metals in its baby food, and failed to adequately inform or warn Plaintiffs and those similarly situated.

52.     The October 2019 HBBF Report provided notice to Sprout that its baby food products contained unacceptable and dangerous levels of heavy metals.[30]  Sprout nevertheless

---

[29] *Id*. at 12-13.

[30] http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

continued to sell the baby food products containing (or at risk of containing) unsafe levels of heavy metals without adequately warning consumers.

53.     Despite Sprout's knowledge of heavy metal contamination in its baby food products, Sprout failed to take action to change or adjust the design, manufacturing, or marketing of its baby food products, or provide adequate warnings about the heavy metal contamination to Plaintiffs and other similarly situated consumers.

54.     Sprout's marketing of its baby food products without any warning indicating that the products contain (or are the risk of containing) toxic heavy metals that can accumulate in a child over time and cause poisoning, injury, and/or disease, was reckless, and undertaken with willful and wanton disregard of Plaintiffs and those similarly situated.

55.     Sprout's misrepresentations and untrue warranties regarding the safety, ingredients, and nutritional value of their baby food products, as well as its omissions and failure to warn about the presence of toxic heavy metals, were material, misleading, and intended and were reasonably likely to deceive the public, including Plaintiffs and similarly situated consumers – especially considering Sprout's long-standing marketing of its baby food products as "wholesome," "organic," "clean," and "packed with essential nutrients your toddler needs."

56.     These representations and "commitments" make Sprout's marketing and labeling deceptive, because they affirmatively misrepresent the list of ingredients and safety and nutrition information, and fail to disclose the presence of (or risk of containing) heavy metals in its baby food products. Reasonable consumers, including Plaintiffs and those similarly situated, were unaware of the presence of (or risk of containing) unsafe levels of heavy metals in Sprout's baby food products, and would not have purchased Sprout's baby food products if they had known that they contain (or were at a risk of containing) heavy metals.  Sprout's above-referenced statements,

representations, warranties, and omissions were false, misleading, and intended to deceive the public, including Plaintiffs and those similarly situated. Plaintiffs and those similarly situated were deceived by the marketing images representing and warranting that Sprout foods are healthy, safe, high-quality, contain only the listed ingredients, while failing to disclose that they contain (or are risk of containing) heavy metals such as arsenic, cadmium, lead and mercury. Sprout also knew that Plaintiffs and similarly situated consumers would deem the presence of (or risk of containing) heavy metals in its baby food products to be material in selecting baby food products for purchase and to be fed to their children.

57. Sprout also knew or should have known that Plaintiffs and similarly situated consumers would feed the Sprout baby food products to their children regularly and that this repeated ingestion would cause and exacerbate the build-up of the heavy metals in their children.

58. As a result of the aforesaid wrongdoing, Sprout has generated substantial sales and profits from the sale of its baby food products to Plaintiffs and similarly situated consumers. These sales would not have occurred if Sprout had provided accurate information.

## RULE 9(B) ALLEGATIONS

59. To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

a. WHO: Sprout Foods, Inc., acting through its employees and agents, made material misrepresentations and omissions of fact in the sale, marketing, advertising, and promotion of its Sprout baby food products.

b. WHAT: Sprout Foods, Inc., made material misrepresentations and omissions by marketing, advertising, promoting, and selling its baby food products as containing listed

ingredients and nutritional benefits, while using materially misleading and false terminology to describe their contents, including but not limited to: "wholesome," "organic," "clean," and "packed with essential nutrients your toddler needs." Such representations and warranties were deceptive and misleading because Sprout baby food products contained (or were at risk of containing) toxic heavy metals that pose a danger to the health and safety of babies and children when ingested. Sprout failed to inform consumers that its baby food products contained (or were at risk of containing) unsafe levels of heavy metals, including cadmium, arsenic, lead, and/or mercury. Plaintiffs and similarly situated reasonable consumers expected that baby food products – particularly those marketed as premium, organic and all-natural – would not contain (or be at risk of containing) dangerous levels of undisclosed heavy metals, and this was known to Sprout. Sprout failed to inform Plaintiffs and similarly situated consumers that Sprout baby food products contained (or were at risk of containing) heavy metals because Sprout intended for them to believe that its baby food products were safe and healthy and posed no unreasonable safety risks to children. Indeed, Sprout knew that its representations, warranties, and omissions rendered the contents of the packages, labels, and marketing, advertising, and promotions false and misleading, because the baby food products contained (or were at risk of containing) unsafe levels of heavy metals.

c.  WHERE: The misrepresentations and material omissions were on Sprout baby food product packages, labels, marketing, advertising, and promotions. These misrepresentations and material omissions were included on the products themselves, which failed to disclose the presence of (or risk of containing) heavy metals.

d.  WHEN:  Sprout made the material misrepresentations and omissions every time its baby food products were sold, marketed, advertised, and promoted.

e.  WHY:  Knowing that consumers would not purchase baby food products containing unsafe levels (or at risk of containing) of heavy metals, Sprout intentionally failed to inform consumers that Sprout baby food products contained(or were at risk of containing)  unsafe levels of heavy metals.  Sprout took these actions in order to profit from the sale of its baby food products despite the health risks they posed, placing profits ahead of safety.

f.  HOW:  Sprout made material misrepresentations and omitted material facts concerning the presence of (or risk of containing) unsafe levels of heavy metals in its baby food products by representing false and incomplete lists of ingredients and nutritional information, and describing the baby food products as safe and healthy both directly and indirectly through misleading terminology, and by failing to inform consumers that they contained (or were at risk of containing) unsafe levels of heavy metals.

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who purchased Sprout baby food products for personal use (and not for resale) from June 25, 2015 to the present (the "Nationwide Class").

61.     Plaintiff Kimca also brings this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a sub-class of all persons who are citizens of Connecticut and who purchased Sprout baby food products June 25, 2015 to the present (the "Connecticut Sub-Class").

62.     Plaintiff Sampson also brings this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a sub-class of all persons who are citizens of Illinois

and who purchased Sprout baby food products from June 25, 2015 to the present (the "Illinois Sub-Class").

63.     Collectively, the Nationwide Class, the Connecticut Sub-Class and the Illinois Sub-Class are referred to as "Classes."

64.     Excluded from the Classes are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise control or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant; and any judges presiding over this case.

65.     This action is brought as a class action for the following reasons:

a.     The Classes consist of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.     There are questions of law or fact common to the Classes that predominate over any questions affecting only individual members, including:

i.     whether Defendant breached its express and/or implied warranties with consumers by selling baby food products containing (or at risk of containing) unsafe levels of heavy metals;

ii.     whether Defendant violated state consumer protection laws;

iii.     whether Plaintiffs and the Classes have sustained damages and, if so, the proper measure thereof; and

iv.     whether Defendant should be enjoined from continuing to sell foods containing (or at risk of containing) dangerous levels of heavy metals without disclosing them to consumers;

c.      The claims asserted by Plaintiffs are typical of the claims of the members of the Classes;

d.      Plaintiffs will fairly and adequately protect the interests of the Classes, and Plaintiffs have retained attorneys experienced in class actions and complex litigation, including class litigation involving consumer protection and deceptive labelling;

e.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

f.      Defendant has acted on grounds that apply generally to the Classes, namely representing that its baby food products are healthy and nutritious and omitting that they contain (or are at risk of containing) unsafe levels of heavy metals, so that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Classes as a whole;

g.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, as the cost of litigation would be prohibitive as compared to the potential recovery for an individual plaintiff; Defendant's violations of its legal obligations will continue without remedy; additional consumers and purchasers will be harmed; and Defendant will continue to retain its ill-gotten gains;

ii.      It would be a substantial hardship for most individual members of the Classes to prosecute individual actions;

iii.      When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Classes;

iv.      A class action will permit an orderly and expeditious administration of the Classes' claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

v.      This lawsuit presents no logistical or other practical difficulties that would impede its management by the Court as a class action; and

vi.      Defendant has acted on grounds generally applicable to Classes, making class-wide monetary and injunctive relief appropriate and feasible.

h.      Class members are ascertainable through the use of purchase records, reward and/or membership programs, the possession of the products themselves and other reliable and objective means.

## CLAIMS FOR RELIEF

### COUNT I
**(Breach of Express Warranty)**

66.      Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

67.      Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

68.      Sprout falsely represented and warranted that Sprout baby food products were safe, healthy, contained specific ingredients listed on the product labels, and were nutritious products to feed to babies and children, utilizing terminology including, but not limited to "wholesome," "organic," "clean," "packed with essential nutrients your toddler needs," and "healthy".  Each of these statements constitutes a representation of fact, basis of the bargain and warranty.

69.     However, Sprout baby foods are not in fact safe and healthy and do not contain only the ingredients listed on their labels because they contain (or at risk of containing) unsafe levels of heavy metals.

70.     The inclusion of (or risk of inclusion) unsafe levels of heavy metals is material because unsafe levels of these toxins rendered Sprout baby food products dangerous, presenting a significant, unreasonable risk of physical and cognitive harm, and thus rendering the baby food products worthless.  Plaintiffs and those similarly situated would not have purchased the Sprout baby food products in the absence of these false and misleading representations and warranties, and/or if the true facts had been disclosed.

71.     Defendant's representations regarding the ingredients in Sprout baby food products related to the goods and became part of the basis of the bargain between Defendant and Plaintiffs and similarly situated purchasers of Sprout baby food products.

72.     Plaintiffs and members of the Nationwide Class purchased Sprout baby food products because they relied on and believed that they conformed to the representations creating express warranties.

73.     As set forth herein, Defendant's statements concerning the safety, health benefits, and ingredients of Sprout baby food products were false, deceptive  and materially misleading.

74.     All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiffs and the other members of the Nationwide Class.

75.     As a result of Defendant's breach of its express warranties, Plaintiffs and the other members of the Nationwide Class were damaged in the amount of the purchase price they paid for Sprout baby food products because the Sprout baby food products were worthless.  Alternatively,

Plaintiffs and the Nationwide Class were damaged equal to the difference in value between the product they were promised and the product they were received, an amount to be proven at trial.

76.     Defendant was on notice that Sprout baby food products contained (or were at risk of containing) unsafe levels of heavy metals, that the presence of these toxins was contrary to and breached Defendant's express warranties, and that Plaintiffs and similarly situated class members would be and actually were damaged as a result.

77.     Plaintiffs notified Sprout regarding its breach of warranty, but Sprout refused to cure such breach.  As a result of Sprout's refusal, this lawsuit was filed.

78.     As a proximate result of the breach of warranties by Defendant, Plaintiffs and the other members of the Classes did not receive goods as warranted.  Among other things, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed herein.  Had Plaintiffs and the members of the Classes known the true facts, they would not have purchased the subject Sprout baby food products.

**COUNT II**
**(Breach of Implied Warranty of Merchantability**
**And Fitness For a Particular Purpose)**

79.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

80.     Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

81.     Defendant knew that the purpose for which consumers purchased its baby food products was to provide for their children safe, healthy, and nutritious foods containing only the ingredients represented on the packages, labels, marketing, advertising, and promotions.

82.     Sprout knew that Plaintiffs and similarly situated consumers trusted and relied on the accuracy of the marketing and labeling for the Sprout baby food products that represent the baby food as safe and suitable for consumption by their children.

23

83.     Plaintiffs and members of the Classes relied on Sprout to disclose the presence of (or risk of containing) any unsafe ingredients such as heavy metals in its baby food products; had they known, or even suspected, that Defendant's foods were contaminated (or were at risk of being contaminated) with unsafe levels of heavy metals, they would not have purchased the subject foods.

84.     Plaintiffs and members of the Classes were injured because Sprout baby food products were not fit for the particular purpose for which they were purchased, namely to provide safe, healthy and nutritious food for their children.

85.     As a proximate result of the breach of implied warranties by Defendant, Plaintiffs and the other members of the Nationwide Class did not receive merchantable goods that were fit for their intended purpose.  Among other things, Plaintiffs and members of the Nationwide Class did not receive the benefit of the bargain and have suffered other injuries and damages as detailed above.  Had Plaintiffs and the members of the Nationwide Class known the true facts, they would not have purchased the subject Sprout baby food products.

## COUNT III
### (Negligent Misrepresentation)

86.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

87.     Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

88.     Sprout owed a duty to Plaintiffs and the Nationwide Class to exercise reasonable and ordinary care in the formulation, design, testing, manufacture, packaging, labeling, marketing, advertising, promotion, distribution, and sale of its baby food products.

89.     Sprout breached its duty to Plaintiffs and the Nationwide Class by designing, testing, formulating, manufacturing, packaging, labeling, marketing, advertising, promoting, distribution, and sale of its baby food products to Plaintiffs and the Classes, because the baby food products contained (or are at risk of containing) unsafe levels of heavy metals, Sprout provided inaccurate

and materially misleading information as to the ingredients, qualities, characteristics, and suitability for consumption of the baby food products, and Sprout failed to remove the subject baby food products from the marketplace or to take other appropriate remedial action to protect the safety and health of the babies and children that Sprout knew would eat the baby food products containing (or at risk of containing) unsafe levels of heavy metals.

90.     Sprout knew or should have known that the ingredients, qualities, and characteristics of the foods were not as represented, marketed, advertised, or promoted, that the baby food products were not suitable for their intended use of consumption by children, and were otherwise not as warranted and represented by Sprout.  Sprout knew or should have known that (1) the baby food products were not nutritious, superior quality, clean, healthy and safe for consumption because they contained, or had a risk of containing, unsafe levels of heavy metals that did not conform to the packaging, labeling, or other representations regarding the ingredients, quality, safety, and nutritional value of the baby food products; and (2) the baby food products were otherwise not as represented and warranted by Sprout.

91.     As a direct and proximate result of Sprout's aforesaid conduct, Plaintiffs and the Nationwide Class have suffered actual damages in that they purchased Sprout baby food products that presented an unreasonable risk of harm and that were thus worthless.  Plaintiffs and the similarly situated members of the Classes would not have purchased the baby food products at all in the absence of the misrepresentations catalogued herein, and if they had been provided accurate information, including that the baby food products contained, or were at risk of containing, unsafe levels of heavy metals.  Alternatively, Plaintiffs and the Nationwide Class were damaged equal to the difference in value between the product they were promised and the product they received, an amount to be proven at trial.

## COUNT IV
### (Violation of the New Jersey Consumer
### Fraud Act, N.J.S.A. 56: 8-1 *et seq.*)

85.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

86.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

87.    The New Jersey Consumer Fraud Act prohibits, *inter alia*:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

88.    Defendant's misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of (or risk of inclusion of) unsafe levels of heavy metals in Sprout baby food products, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of baby food products in violation of the New Jersey Consumer Fraud Act.

89.    Defendant's false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase Sprout baby food products.

90.    Defendant failed to inform consumers that Sprout baby food products contained (or at risk of containing) unsafe levels of heavy metals. That information would have been material to any consumer deciding whether to purchase Sprout baby food products.

91.    Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiffs and similarly situated class members did rely on such statements and omissions.

92.     Upon information and belief, Defendant's misrepresentations and omissions were created, approved, and implemented from its New Jersey headquarters.

93.     Plaintiffs and the other members of the Nationwide Class suffered an ascertainable loss as a direct and proximate result of Defendant's actions in violation of the New Jersey Consumer Fraud Act.

94.     Because of Defendant's wrongful actions, Plaintiffs and the other members of the Nationwide Class suffered an ascertainable monetary loss based on and measured by the price they paid for Sprout baby food products, which they would not have paid in the absence of the aforesaid wrongdoing.

95.     Plaintiffs and other members of the Class suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have purchased Sprout foods if the true facts concerning unsafe levels of heavy metals had been known.

96.     Defendant's sale of baby food products containing (or at risk of containing) unsafe levels of heavy metals for consumption by children was unconscionable, and the misrepresentations and omissions it made with regard to Sprout baby food products were made for the sole purpose of inducing consumers to purchase Sprout baby food products to feed to their children irrespective of any health consequences.  Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of children eating the baby food products.  Defendant is therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

97.     By reason of the foregoing, Defendant is liable to Plaintiffs and the other members of the Nationwide Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit.  N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

## COUNT V
### (Violation of 815 Ill. Comp. Stat. Ann. § 505/1 *et seq.*)

98.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

99.     Plaintiff Sampson brings this claim individually and on behalf of the Illinois Sub-Class.

100.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits, *inter alia*:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . .

815 Ill. Comp. Stat. Ann. § 505/2.

101.     Defendant's unfair and false, deceptive, and misleading statements and omissions with respect to the ingredients contained and the nutritional value its baby foods, as described above, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of goods in violation of the Consumer Fraud and Deceptive Business Practices Act.

102.     Defendant's unfair and false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase Sprout baby food products.

103.     Defendant made these unfair, false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements.

104.     Defendant's scheme, which affects Illinois' most vulnerable citizens, is immoral, unethical, oppressive, and unscrupulous.

28

105.     Plaintiff Sampson and other Sub-Class members suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of the Consumer Fraud and Deceptive Business Practices Act.

106.     Because of Defendant's wrongful actions, Plaintiff Sampson and the other Sub-Class members suffered an ascertainable monetary loss based on the price they paid for Sprout baby food products that were worthless and which they otherwise would not have purchased had they known that Sprout baby food products contained (or were at risk of containing) dangerous heavy metals.  Alternatively, Plaintiffs and the Nationwide Class were damaged equal to the difference in value between the product they were promised and the product they received, an amount to be proven at trial

107.     By reason of the foregoing, Defendant is liable to Plaintiff and Sub-Class members for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit. 815 Ill. Comp. Stat. Ann. § 505/10(a).

108.     Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of Plaintiff Sampson's and the other Sub-Class Members' children. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

<u>**COUNT VI**</u>
**(Violation Of Connecticut Unfair Trade Practices Act,**
**Conn. Gen. Stat. Ann. §§ 42-110a *et seq.*)**

109.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

110.     Plaintiff Kimca brings this claim individually and on behalf of the Connecticut Sub-Class.

111.    Plaintiff Kimca and members of the Connecticut Sub-Class are persons within the context of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42-110a *et seq.* (hereinafter "CUTPA") and specifically § 42-110a(3).

112.    Defendant is a person within the context of CUTPA, § 42-110a(3) and was engaged in trade and commence under CUTPA, § 42-110a(4).

113.    Defendant committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of CUTPA, § 42-110b(a).

114.    Defendant fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Kimca and members of the Connecticut Sub-Class the ingredients and nutritional value of Sprout baby food products and concealed the fact that these products contain (or at risk of containing) dangerous levels of heavy metals.

115.    Defendant had actual knowledge that Sprout baby food products contained (orwere at   risk of containing) dangerous levels of heavy metals, purposely failed to disclose such information to consumers, and instead created a marketing campaign and product labels that would lead any reasonable consumer to believe that Sprout baby food products were healthy and nutritious for infants.

116.    Defendant intended Plaintiff Kimca and members of the Connecticut Sub-Class would rely upon misrepresented characteristics of Sprout baby food products.

117.    If Defendant had not concealed that Sprout baby food products contained dangerous (or at risk of containing) levels of heavy metals from Plaintiff Kimca and members of the Connecticut Sub-Class they never would have purchased such products.

118.    Defendant violated CUTPA by failing to inform members of the Connecticut Sub-Class prior to purchase that Sprout baby food products contained dangerous levels or heavy metals

and that the products were not healthy and nutritious as the product labelling and marketing indicated.

119.    As a proximate and direct result of Defendant's unfair and deceptive trade practices, Plaintiff Kimca and members of the Connecticut Sub-Class purchased Sprout baby food products and sustained financial harm as recognized by CUTPA, § 42-110g(a).

120.    Pursuant to Conn. Gen. Stat. § 42-110g(c), a copy of this complaint is being contemporaneously mailed to the Attorney General and the Commissioner of Consumer Protection with the filing of this document.

121.    Defendant's conduct offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous; and, caused substantial injury to Connecticut Sub-Class members without any countervailing benefits to consumers.

## COUNT IV
### (Fraud)

122.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

123.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

124.    Sprout made material misrepresentations and omissions concerning a presently existing or past fact.  Sprout intentionally failed to fully and truthfully disclose to Plaintiffs and similarly situated consumers the true list of ingredients in its baby food products, and the true safety, nutritional value, and risks of eating the baby food products, which was not readily discoverable. As a result, Plaintiffs and the other members of the Nationwide Class relied on the false and misleading information provided by Sprout, and were thus fraudulently induced to purchase the Sprout baby food products containing (or at risk of containing) unsafe levels of heavy metals.

125.     Sprout's affirmative misrepresentations and omissions were made by Sprout with knowledge of their falsity, and with the intent that Plaintiffs and other members of the Nationwide Class would rely on them.

126.     Plaintiffs and other members of the Nationwide Class reasonably relied on these statements and omissions, and suffered damages as a result.

## COUNT VIII
### (Unjust Enrichment)

127.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

128.     Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

129.     This cause of action is pled in the alternative to the other claims.

130.     Plaintiffs and those similarly situated conferred a tangible economic benefit upon Defendant by purchasing the Sprout baby food products.  Plaintiffs and those similarly situated would not have purchased the Sprout baby food products had they known that they contained (or were at risk of containing) unsafe levels of heavy metals.

131.     By engaging in the conduct described above, Defendant was unjustly enriched and received a benefit beyond what was contemplated by the parties, at the expense of Plaintiffs and those similarly situated.

132.     It would be unjust and inequitable for Defendant to retain the payments Plaintiffs and those similarly situated made for the Sprout foods.

133.     By reason of the foregoing, Defendant is liable to Plaintiffs and members of the Nationwide Class for the damages that they have suffered as a result of Defendant's actions, the amount of which shall be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against

Defendant as to each and every count and enter an Order:

a) certifying this action as a class action, with Classes as defined above;

b) appointing Plaintiffs as class representative and their counsel as class counsel, to represent the Classes, and requiring Sprout to bear the costs of class notice;

c) requiring Sprout to pay all actual, compensatory, and statutory damages permitted or required for the conduct set forth herein;

d) requiring Sprout to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice set forth or encompassed herein;

e) requiring Sprout to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading packaging, labeling, advertising, marketing, or promotion, or a violation of law;

f) enjoining Sprout from selling the Sprout baby food products until the unsafe levels of heavy metals are removed, and/or until full disclosure of the presence of the unsafe levels of heavy metals are truthfully disclosed on all packaging, labels, advertising, marketing, and promotions;

g) enjoining Sprout from selling Sprout baby food products in any manner suggesting or implying that they are healthy, organic, clean and/or safe for consumption, as long as they contain unsafe levels of heavy metals;

h) requiring Sprout to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing baby food products;

i) awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Sprout from continuing the unlawful practices alleged herein, and injunctive relief to remedy Sprout's past conduct;

j) requiring Sprout to pay pre- and post-judgment interest;

k) requiring Sprout to pay treble damages;

l) requiring Sprout to pay punitive damages;

m) awarding attorney's fees and costs, including the costs of pre-suit investigation; and

n) providing such further relief as the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all counts and claims.

/s/ Matthew R. Mendelsohn
Matthew R. Mendelsohn
Adam M. Slater
Julia S. Slater
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Phone: (973) 228-0391
mrm@mazieslater.com
aslater@mazieslater.com
jslater@mazieslater.com

Jonathan Shub
Kevin Laukaitis (*pro hac vice* forthcoming)
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Phone: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

Gary E. Mason (*pro hac vice* forthcoming)
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Phone: (202) 429-2290
gmason@masonllp.com

Jeffrey S. Goldenberg (*pro hac vice* forthcoming)
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8297
jgoldenberg@gs-legal.com

David C. Magagna Jr.
Charles E. Schaffer (*pro hac vice* forthcoming)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 191060

Phone: (215) 592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

Gary S. Graifman
Melissa R. Emert (*pro hac vice* forthcoming)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road
Montvale, NJ 07645
Phone: (845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com

*Attorneys for Plaintiffs*

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

I hereby further certify that to the best of my knowledge the matter in controversy is the

not the subject of another action, pending arbitration or administrative proceeding in this District.

Dated: June 25, 2021

*/s/ Matthew R. Mendelsohn*    
Matthew R. Mendelsohn
Adam M. Slater
Julia S. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391
*Attorneys for Plaintiffs*

EXHIBIT A

# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°
David M. Estes

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

°Member of N.J. & N.Y. Bars

**Writer's Direct Dial & Email:**
**973-228-0391**
**mrm@mazieslater.com**

Karen G. Kelsen°
Cheryll A. Calderon
Adam M. Epstein°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Alexander Q. Reynoso
Samuel G. Wildman
Julia S. Slater°

March 4, 2021

**_Via FedEx & Certified Mail, RRR_**
Sprout Foods, Inc.
50 Chestnut Ridge Road
Montvale, NJ 07645
**Attn: Legal Department**

<u>**NOTICE OF VIOLATIONS OF THE FOLLOWING:**</u>
1. **New Jersey Consumer Fraud Act;**
2. **California Consumers Legal Remedies Act;**
3. **California Unfair Competition Law;**
4. **California False Advertising Law;**
5. **Georgia Uniform Deceptive Trade Practices Act;**
6. **Texas Deceptive Trade Practices-Consumer Protection Act;**
7. **Breach of Express Warranty;**
8. **Breach of Implied Warranty.**

To Whom It May Concern:

Pursuant to the above statutes/laws and/or the Uniform Commercial Code, this notice is sent via Federal Express and by certified or registered mail, return receipt requested, to Sprout Foods, Inc's ("Sprout") principal places of business.

PLEASE TAKE NOTICE THAT, for the reasons stated below, Sprout is in violation of statutes listed above.

This notice is served on you by Heather Lindquist, Raylene Perez, Cierra Wilson, Isabel Delgado, Jancy Ortiz, Shannon Hamilton, Nicole Baker, Christella Rosalene Talamante, Anthony Dickerson, Ayedan Wilson, Ar-Shaune Wilson, Luis Rosabo, Logan Kirlew, Layla Kirlew, Tysean Miller, Julie Hamilton, Gabriella Hamilton, Thomas Hamilton, Zachariah Taylor, Ariel Hutchins ("Plaintiffs") and other individuals on behalf of themselves and all other members of the class of similarly situated persons they will seek to represent in proposed litigation. Please direct all communications or responses regarding this Notice to the following counsel:

Sprout Foods, Inc.
June 25, 2021
Page 2

       Matthew R. Mendelsohn, Esq.
       Adam M. Slater, Esq.
       Julia S. Slater, Esq.
       Mazie Slater Katz & Freeman, LLC 103 Eisenhower Parkway
       Roseland, NJ 07068
       (973) 228-0391
       (973) 533-0770
       mrm@mazieslater.com
       aslater@mazieslater.com
       jslater@mazieslater.com

If you intend to cure these violations, please notify counsel within **30 days of receipt** of this notice.

## <u>STATEMENT OF VIOLATIONS</u>

       Plaintiffs, like other consumers, relied on representations made by Sprout regarding the ingredients, nutrition and safety of its baby food products[1]. Based on such representations, Plaintiffs and other consumers purchased Sprout foods to feed their children. On February 4, 2021, Plaintiffs learned that the trust they had placed in Sprout was misgiven. On that day, the United States House of Representatives issued a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (hereinafter referred to as "House Report").[2] The House Report confirmed that despite repeated requests made to Sprout, "due to evasion or negligence," Sprout failed to respond or cooperate in the House inquiry. Nevertheless, the House Report cited data from the "Healthy Babies Bright Futures Report: What's in My Baby's Food?"[3] that confirmed that Sprout baby food products tested high, at unsafe levels, in Arsenic, Lead, Cadmium and Mercury, all toxic heavy metals.

       Despite Sprout's knowledge of the presence of unsafe levels of heavy metals in its baby food products, Sprout never disclosed the presence of these unsafe levels of dangerous substances to consumers and continued to market its foods as "healthy, whole organic foods," "clean,"

---

[1] The Sprout food products include, but are not limited to: Spinach Banana Apple, Sweet Potato White Beans, Apple Oatmeal Raisin, Mixed Berry Oatmeal, Carrot Apple Mango, Carrot Chickpeas Zucchini Pear, Strawberry Pear Banana, Butternut Blueberry Apple with Beans, Blueberry Banana Oatmeal, Apple Banana Butternut Squash, Sweet Potato Apple Spinach, Apple Blueberry, Butternut Chickpea Quinoa & Dates, Pumpkin Apple Red Lentil, Market Vegetables Pears with Turkey, Garden Vegetables Brown Rice with Turkey, Sweet Pea Carrot Corn & White Bean, Harvest Vegetables Apricot with Chicken, Root Vegetables Apple with Beef, Creamy Vegetables with Chicken, Power Paks, Smoothies, Curlz, Wafflez, and Puffs.

[2] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf

[3] https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf

Sprout Foods, Inc.
June 25, 2021
Page 3

"wholesome," "packed with essential nutrients your toddler needs … for brain development" and other similar statements. Sprout's misrepresentations and warranties resulted in Plaintiffs and other consumers purchasing Sprout products that they thought were nutritious and healthy, containing only the delineated ingredients, and instead were paying for baby food products that were unsafe and harming their children. The presence of these unsafe levels of heavy metals rendered the Sprout baby food products worthless, unfit for its intended purpose, and denied consumers the benefit of their bargain. Plaintiffs, on behalf of themselves and all similarly situated individuals, now seek to recover the money they paid for this worthless baby food and obtain an order requiring that Sprout disclose the presence, or risk, of unsafe levels of heavy metals in its foods and the dangers posed by such contamination, as well as to correct the false and misleading perception Sprout has created in the minds of consumers that its foods are high quality, safe, and healthy.

Sprout's acts and practices in connection with the advertising of its products are in violation of the above-listed statutes in that:

(a)     Sprout sells, markets, and advertises goods and services with intent not to sell them as advertised;

(b)     Sprout sells, markets, and advertises goods and services with false and misleading statements;

(c)     Sprout sells, markets, and advertises goods and services with misrepresentations regarding the nature of the transaction; and

(d)     Sprout sells, markets, and advertises goods and services with statements likely to mislead consumers about the nature of a product or service;

(e)     And other unfair and deceptive acts and practices.

Plaintiffs and others similarly situated have suffered injury and loss of money because in reliance upon misrepresentations and omissions they purchased items they otherwise would not have purchased had they known that Sprout's baby food products contained, or risked containing, the presence of unsafe levels of heavy metals.

## **REQUESTED REMEDIES**

PLAINTIFFS HEREBY DEMAND THAT WITHIN THIRTY (30) DAYS after the date on which this Notice is served on you, you remedy your violations by doing the following:

a)     Disseminate notice to all consumers regarding the presence of unsafe levels of heavy metals in Sprout baby food products and the potential danger ingestion of such heavy metals pose to children;

Sprout Foods, Inc.
June 25, 2021
Page 4

    b)   Cease selling Sprout baby food products until the heavy metals are removed and/or full disclosure of the presence of such contaminants appears on all labels, packaging, and advertising, marketing, and promotions;

    c)   Cease selling Sprout foods in any manner suggesting or implying that they are healthy, organic, clean and/or safe for consumption unless all heavy metals are removed;

    d)   Engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

    e)   Pay restitution to Plaintiffs and all similarly-situated consumers to restore all funds acquired by means of Sprout's misrepresentations and omissions about its baby food products;

    f)   Pay into a Court-approved escrow account an amount of money sufficient to pay Plaintiffs' attorneys' fees and costs.

Sprout's failure to promptly agree to requested remedies will result in the filing of a lawsuit without further notice.

    Please be guided accordingly.

                    Very truly yours,

                    MATTHEW R. MENDELSOHN

# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

**Writer's Email:**
**jslater@mazieslater.com**

April 5, 2021

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°
David M. Estes

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

°Member of N.J. & N.Y. Bars

Karen G. Kelsen°
Cheryll A. Calderon
Adam M. Epstein°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Alexander Q. Reynoso
Samuel G. Wildman
Julia S. Slater°

___

**_Via Regular Mail E-Mail- adam.fox@squirepb.com_**
Sprout Foods, Inc.
50 Chestnut Ridge Road
Montvale, NJ 07645
**Attn: Legal Department**

### NOTICE OF VIOLATIONS OF THE FOLLOWING:
1. **Illinois Consumer Fraud and Deceptive Business Practices Act;**
2. **California Consumers Legal Remedies Act;**
3. **California Unfair Competition Law;**
4. **California False Advertising Law;**
5. **Texas Deceptive Trade Practices-Consumer Protection Act;**
6. **Florida Deceptive and Unfair Trade Practices Act;**
7. **Breach of Express Warranty;**
8. **Breach of Implied Warranty.**

To Whom It May Concern:

Pursuant to the above statutes/laws and/or the Uniform Commercial Code, this notice is sent via Federal Express and by certified or registered mail, return receipt requested, to Sprout Foods, Inc's ("Sprout") principal places of business.

PLEASE TAKE NOTICE THAT, for the reasons stated below, Sprout is in violation of statutes listed above.

This notice is served on you by Brittany Wade, Derrick Sampson, Adrien High, Lauren Vaughan ("Plaintiffs") and other individuals on behalf of themselves and all other members of the class of similarly situated persons they will seek to represent in proposed litigation.  Please direct all communications or responses regarding this Notice to the following counsel:

Matthew R. Mendelsohn, Esq.
Adam M. Slater, Esq.

Sprout Foods, Inc.
April 5, 2021
Page 2

Julia S. Slater, Esq.
Mazie Slater Katz & Freeman, LLC 103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391
(973) 533-0770
mrm@mazieslater.com
aslater@mazieslater.com
jslater@mazieslater.com

If you intend to cure these violations, please notify counsel within **30 days of receipt** of this notice.

## STATEMENT OF VIOLATIONS

Plaintiffs, like other consumers, relied on representations made by Sprout regarding the ingredients, nutrition and safety of its baby food products[1]. Based on such representations, Plaintiffs and other consumers purchased Sprout foods to feed their children. On February 4, 2021, Plaintiffs learned that the trust they had placed in Sprout was misgiven. On that day, the United States House of Representatives issued a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (hereinafter referred to as "House Report").[2] The House Report confirmed that despite repeated requests made to Sprout, "due to evasion or negligence," Sprout failed to respond or cooperate in the House inquiry. Nevertheless, the House Report cited data from the "Healthy Babies Bright Futures Report: What's in My Baby's Food?"[3] that confirmed that Sprout baby food products tested high, at unsafe levels, in Arsenic, Lead, Cadmium and Mercury, all toxic heavy metals.

Despite Sprout's knowledge of the presence of unsafe levels of heavy metals in its baby food products, Sprout never disclosed the presence of these unsafe levels of dangerous substances to consumers and continued to market its foods as "healthy, whole organic foods," "clean," "wholesome," "packed with essential nutrients your toddler needs … for brain development" and other similar statements. Sprout's misrepresentations and warranties resulted in Plaintiffs and other consumers purchasing Sprout products that they thought were nutritious and healthy, containing only the delineated ingredients, and instead were paying for baby food products that were unsafe

---

[1] The Sprout food products include, but are not limited to: Spinach Banana Apple, Sweet Potato White Beans, Apple Oatmeal Raisin, Mixed Berry Oatmeal, Carrot Apple Mango, Carrot Chickpeas Zucchini Pear, Strawberry Pear Banana, Butternut Blueberry Apple with Beans, Blueberry Banana Oatmeal, Apple Banana Butternut Squash, Sweet Potato Apple Spinach, Apple Blueberry, Butternut Chickpea Quinoa & Dates, Pumpkin Apple Red Lentil, Market Vegetables Pears with Turkey, Garden Vegetables Brown Rice with Turkey, Sweet Pea Carrot Corn & White Bean, Harvest Vegetables Apricot with Chicken, Root Vegetables Apple with Beef, Creamy Vegetables with Chicken, Power Paks, Smoothies, Curlz, Wafflez, and Puffs.

[2] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf

[3] https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf

Sprout Foods, Inc.
April 5, 2021
Page 3

and harming their children. The presence of these unsafe levels of heavy metals rendered the Sprout baby food products worthless, unfit for its intended purpose, and denied consumers the benefit of their bargain. Plaintiffs, on behalf of themselves and all similarly situated individuals, now seek to recover the money they paid for this worthless baby food and obtain an order requiring that Sprout disclose the presence, or risk, of unsafe levels of heavy metals in its foods and the dangers posed by such contamination, as well as to correct the false and misleading perception Sprout has created in the minds of consumers that its foods are high quality, safe, and healthy.

Sprout's acts and practices in connection with the advertising of its products are in violation of the above-listed statutes in that:

(a)     Sprout sells, markets, and advertises goods and services with intent not to sell them as advertised;

(b)     Sprout sells, markets, and advertises goods and services with false and misleading statements;

(c)     Sprout sells, markets, and advertises goods and services with misrepresentations regarding the nature of the transaction; and

(d)     Sprout sells, markets, and advertises goods and services with statements likely to mislead consumers about the nature of a product or service;

(e)     And other unfair and deceptive acts and practices.

Plaintiffs and others similarly situated have suffered injury and loss of money because in reliance upon misrepresentations and omissions they purchased items they otherwise would not have purchased had they known that Sprout's baby food products contained, or risked containing, the presence of unsafe levels of heavy metals.

## REQUESTED REMEDIES

PLAINTIFFS HEREBY DEMAND THAT WITHIN THIRTY (30) DAYS after the date on which this Notice is served on you, you remedy your violations by doing the following:

a)     Disseminate notice to all consumers regarding the presence of unsafe levels of heavy metals in Sprout baby food products and the potential danger ingestion of such heavy metals pose to children;

b)     Cease selling Sprout baby food products until the heavy metals are removed and/or full disclosure of the presence of such contaminants appears on all labels, packaging, and advertising, marketing, and promotions;

Sprout Foods, Inc.
April 5, 2021
Page 4

    c)    Cease selling Sprout foods in any manner suggesting or implying that they are healthy, organic, clean and/or safe for consumption unless all heavy metals are removed;

    d)    Engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

    e)    Pay restitution to Plaintiffs and all similarly-situated consumers to restore all funds acquired by means of Sprout's misrepresentations and omissions about its baby food products;

    f)    Pay into a Court-approved escrow account an amount of money sufficient to pay Plaintiffs' attorneys' fees and costs.

Sprout's failure to promptly agree to requested remedies will result in the filing of a lawsuit without further notice.

    Please be guided accordingly.

            Very truly yours,

            *Julia Slater*

            JULIA S. SLATER