## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRIDA KIMCA, DERRICK SAMPSON, BRITTANY TOMKO, JANCY ORTIZ, DINATRA WYNN, SARAH WARDALE, JUANITA CORNETT individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SPROUT FOODS, INC. D/B/A SPROUT ORGANIC FOODS and SPROUT NUTRITION,<br><br>    Defendant. | Case No.: 2:21-cv-12977-SRC-JSA<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs Irida Kimca, Derrick Sampson, Brittany Tomko, Jancy Ortiz, Dinatra Wynn, Sarah Wardale and Juanita Cornett (collectively "Plaintiffs"), individually and on behalf of all those similarly situated, file this Complaint against the Defendant Sprout Foods, Inc. d/b/a Sprout Organic Foods and Sprout Nutrition ("Sprout" or "Defendant"), for its misleading, deceptive, unfair, and/or false business practices and warranties concerning Defendant's baby food products (defined below) sold through the United States, which contain certain heavy metals, including arsenic, lead, cadmium, and mercury. Plaintiffs allege the following based upon personal knowledge as to themselves and their own actions and upon information and belief and investigation of their counsel as to all other matters.  Given the concealed nature of Defendant's conduct, Plaintiffs believe that an opportunity to conduct discovery will reveal further support for Plaintiffs' allegations.

### NATURE OF THE ACTION

1.      Heavy metals, such as arsenic, lead, cadmium, and mercury, have no health benefit

and are unfit for human consumption. Both the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared these heavy metals to be dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.

2.     Babies' developing brains are exceptionally sensitive to injury caused by heavy metals and several developmental processes have been shown to be highly vulnerable to heavy metal toxicity.  Even low levels of exposure to heavy metals can cause serious and often irreversible damage to brain development leading to permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.

3.     Reasonable parents, like Plaintiffs, trust manufacturers, like Sprout, to sell baby food that is healthy, nutritious, and not have harmful levels of toxins, contaminants, and chemicals.  They certainly expect the food they feed their infants and toddlers to not have elevated levels of heavy metals—substances known to have significant and dangerous health consequences.

4.     Consumers such as Plaintiffs also lack the scientific knowledge necessary to determine whether Sprout's baby food products do in fact contain heavy metals.  Accordingly, reasonable consumers must and do rely on Defendant to disclose what its baby food products contain. This is especially true for ingredients like heavy metals that are material to a reasonable parent's purchasing decision.

5.     Sprout manufactured and marketed baby food products, representing and warranting that its baby food was safe and healthy, contained only a disclosed list of ingredients, and would provide nourishment and nutrition to infants and children.

6.     Defendant's own testing, as well as other testing discussed below, demonstrates that numerous Sprout baby food products contain elevated and unsafe levels of heavy metals ("Sprout

Baby Foods")[1],  which include, but may not be limited to:

- Prunes Organic Baby Food

- Carrot Apple Mango Organic Baby Food

- Mixed Berry Oatmeal Organic Baby Food

- Garden Vegetables Brown Rice with Turkey Organic Baby Food

- Organic Veggie Power - Sweet Potato with Mango, Apricot & Carrot

- Organic Puffs Baby Cereal Snack

- Organic Crispy Chews Red Fruit Beet & Berry with Crispy Brown Rice Toddler Fruit Snack

- Organic Wafflez

- Organic Curlz

- Organic Crinklez

7.     On February 4, 2021, the Subcommittee on Economic and Consumer Policy ("House Subcommittee") of the United States House of Representatives issued a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[2] (hereinafter referred to as the "House Report").  The House Report detailed the findings from an extensive inquiry focused on the safety of baby food products and reported shockingly high levels of heavy metals in baby food products.  According to the House Report, several brands of baby food sold in the United States have "[i]nternal company standards [that] permit dangerously high levels of heavy

---

[1] The products listed have been tested and confirmed to contain >10 ppb arsenic, >5 ppb cadmium, >5 ppb lead, and/or >5 ppb mercury.

[2] *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

metals, and . . . that the manufacturers have often sold foods that exceeded these levels."[3]

8.      The House Report confirmed that despite repeated requests made to Sprout, "due to evasion or negligence," Sprout failed to respond or cooperate in the House inquiry.  Nevertheless, the House Report cited data from the "Healthy Babies Bright Futures Report: What's in My Baby's Food?" that confirmed that some Sprout products tested high in Arsenic, Lead, Cadmium and Mercury, which are all toxic heavy metals.[4]

9.      On September 29, 2021, the House Subcommittee issued a new report titled "New Disclosures Show Dangerous Levels of Heavy Metals in Even More Baby Foods" (hereinafter referred to as the "Supplemental House Report"). [5]

10.      The Supplemental House Report confirmed that following the publication of the original report, Sprout began to partially cooperate with the investigation, but that the "handful of documents that Sprout provided displayed a lax approach to testing for toxic heavy metals in its baby foods," labeling Sprout's testing practices as the "most reckless among baby food manufacturers."[6]

11.      Recent testing commissioned by Plaintiffs' counsel also confirmed significant levels of cadmium, arsenic, and lead in certain foods manufactured and sold by Sprout. For instance, Plaintiffs tested several Sprout products that were purchased by and in the possession of Plaintiff Sampson, including Sprout Organic Wafflez – Blueberry Apple, which was found to contain

---

[3]  House Report, at 4.

[4] http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf

[5] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf.

[6] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf, at 2-3.

cadmium levels at more than double the limit of allowable cadmium in bottled water.  Plaintiffs also tested several Sprout "Curlz" and "Sprinklez" products which were found to contain elevated levels of arsenic, cadmium and lead:  between 6 and 7 times the limit of allowable arsenic in bottled water, triple the limit of allowable cadmium in bottled water and nearly triple the limit of allowable lead in bottled water.  These results further show that elevated and unsafe levels of heavy metals are present in Sprout Baby Foods.

12.     Despite the presence of toxic heavy metals in its food, Sprout never disclosed the presence of these toxins to consumers and continued to market its foods as "healthy, whole organic foods."[7]

13.     As a result of Defendant's misleading, deceptive, unfair, and/or false business practices and warranties, thousands of consumers paid a premium price for Sprout Baby Foods that they thought were safe, healthy, and nutritious, but which actually contained heavy metals. Meanwhile, Defendant profited from reasonable consumers who paid a premium price for Sprout Baby Foods that both misrepresented and omitted material information as to the foods' true quality and value. Sprout continues to wrongfully induce consumers to purchase Sprout Baby Foods.

14.     The presence of heavy metals rendered the Sprout Baby Foods unfit for their intended purpose and use, defective, worthless, and denied consumers the benefit of their bargain.

15.     The presence of heavy metals in baby foods is material to consumers. Consumers would not knowingly purchase baby foods for their children from a manufacturer that allowed its baby foods to contain heavy metals. Yet, Defendant, knowingly sold Sprout Baby Foods containing

---

[7] See https://web.archive.org/web/20210419113938/http://www.sproutorganicfoods.com/about-us/values-guarantee.  After Plaintiffs' initial Complaint was filed on June 25, 2021, Sprout scrubbed many of the subject misrepresentations from its website.  Accordingly, citations to the former Sprout webpages are made via the Internet Archive (also known as the "Wayback Machine").

unsafe amounts of heavy metals.  Furthermore, Defendant knowingly did so without disclosing this information to its customers.

16.      As demonstrated by the testing discussed in this Complaint, it is possible to manufacture baby food products that do not contain elevated and unsafe levels of heavy metals.  In fact, some of Defendant's own baby food products do not contain elevated levels.

17.      Plaintiffs, on behalf of themselves and all similarly situated individuals, seek monetary and equitable relief based on Defendant's breach of express and implied warranties, negligent misrepresentation, fraud, violation of state consumer protection statutes, and unjust enrichment.

## JURISDICTION AND VENUE

18.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a state other than that of Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

19.      Venue is proper in this Court because the acts and omissions giving rise to this lawsuit took place in this District, at least one Plaintiff resides in this District, and Defendant maintains significant business operations within the District.

## THE PARTIES

**Plaintiffs**

20.      Plaintiff Irida Kimca ("Kimca"), is a citizen of Connecticut and a resident of Orange, Connecticut.  Plaintiff Irida Kimca purchased various Sprout Baby Food for her child beginning in 2016.  Plaintiff Kimca purchased Sprout Baby Foods from various stores, including Shoprite, Stop & Shop, and Walmart, located in Milford, Connecticut, and Stamford, Connecticut.

6

Plaintiff Kimca believed she was feeding her child healthy, nutritious baby food.  Plaintiff Kimca saw and relied upon Sprout's marketing and branding, in addition to the packaging of the Sprout Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Sprout Baby Foods contained heavy metals. If Plaintiff had known that the Sprout Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Sprout Baby Foods.

21.     Plaintiff Derrick Sampson ("Sampson") is a citizen of Illinois and a resident of Forest Park, Illinois.  Plaintiff Derrick Sampson purchased various Sprout Baby Foods, including but not limited to Carrot Apple Mango Organic Baby Food and Organic Wafflez - Blueberry Apple, for his child beginning in 2020.  Plaintiff Sampson purchased Sprout Baby Foods from various stores, including Walgreens and Pete's Market located in Oak Park, Illinois.  Plaintiff Sampson believed he was feeding his child healthy, nutritious baby food.  Plaintiff Sampson saw and relied upon Sprout's marketing and branding, in addition to the packaging of the Sprout Baby Foods he purchased.  Plaintiff made those purchases without knowledge that the Sprout Baby Foods contained heavy metals.  If Plaintiff had known that the Sprout Baby Foods he purchased contained heavy metals he would not have purchased or would not have paid as much for the Sprout Baby Foods.

22.     Plaintiff Brittany Tomko ("Tomko") is a citizen of New Jersey and a resident of Hamilton, New Jersey.  Plaintiff Tomko purchased various Sprout Baby Foods, including but not limited to Carrot Apple Mango Organic Baby Food, Mixed Berry and Oatmeal Organic Baby Food, and Organic Puffs for her children beginning in 2015.  Plaintiff Tomko purchased Sprout Baby Foods from various stores, including Shoprite, buybuyBABY, Walmart and Whole Foods in New Jersey.  Plaintiff Tomko believed she was feeding her children healthy, nutritious baby food.

Plaintiff Tomko saw and relied upon Sprout's marketing and branding, in addition to the Sprout Baby Foods she purchased. Plaintiff made those purchases without knowledge that the Sprout Baby Foods contained heavy metals. If Plaintiff had known that the Sprout Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Sprout Baby Foods.

23.    Plaintiff Jancy Ortiz ("Ortiz") is a citizen of New Jersey and a resident of Jersey City, New Jersey. Plaintiff Ortiz purchased various Sprout Baby Foods, including but not limited to Carrot Apple Mango Organic Baby Food, Mixed Berry and Oatmeal Organic Baby Food, Organic Curlz, Organic Crinklez and Organic Crispy Chews Red Fruit Beet & Berry with Crispy Brown Rice Toddler Fruit Snack for her child beginning in 2020. Plaintiff Ortiz purchased Sprout Baby Foods from various stores, including Target and Walmart in New Jersey. Plaintiff Ortiz believed she was feeding her child healthy, nutritious baby food. Plaintiff Ortiz saw and relied upon Sprout's marketing and branding, in addition to the packaging of the Sprout Baby Foods she purchased. Plaintiff made those purchases without knowledge that the Sprout Baby Foods contained heavy metals. If Plaintiff had known that the Sprout Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Sprout Baby Foods.

24.    Plaintiff Dinitra Wynn ("Wynn") is a citizen of New Jersey and a resident of Englewood, New Jersey. Plaintiff Wynn purchased various Sprout Baby Foods, including but not limited to Carrot Apple Mango Organic Baby Food, Organic Curlz, and Organic Veggie Power - Sweet Potato with Mango, Apricot & Carrot for her child beginning in 2020. Plaintiff Wynn purchased Sprout Baby Foods from various stores, including Shoprite in New Jersey. Plaintiff Wynn believed she was feeding her child healthy, nutritious baby food. Plaintiff Wynn saw and

relied upon Sprout's marketing and branding, in addition to the packaging of the Sprout Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Sprout Baby Foods contained heavy metals.  If Plaintiff had known that the Sprout Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Sprout Baby Foods.

25.     Plaintiff Sarah Wardale ("Wardale") is a citizen of Texas and a resident of McKinney, Texas.  Plaintiff Wardale purchased various Sprout Baby Foods, including but not limited to Mixed Berry and Oatmeal for her child beginning in 2019.  Plaintiff Wardale purchased Sprout Baby Foods from various stores, including Whole Foods and Fred Meyer in Texas.  Plaintiff Wardale believed she was feeding her child healthy, nutritious baby food.  Plaintiff Wardale saw and relied upon Sprout's marketing and branding, in addition to the packaging of the Sprout Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Sprout Baby Foods contained heavy metals.  If Plaintiff had known that the Sprout Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Sprout Baby Foods.  On December 17, 2021, Plaintiff Wardale sent a letter to Defendant complying with Tex. Bus. & Com. Code Ann. § 17.505.

26.     Plaintiff Juanita Cornett ("Cornett") is a citizen of New York and a resident of Queens, New York.  Plaintiff Cornett was formally a citizen and resident of Georgia.  Plaintiff Cornett purchased various Sprout Baby Foods, for her children beginning in 2019.  Plaintiff Cornett purchased Sprout Baby Foods from various stores in both Georgia and New York.  Plaintiff Cornett believed she was feeding her children healthy, nutritious baby food.  Plaintiff Cornett saw and relied upon Sprout's marketing and branding, in addition to the packaging of the Sprout Baby Foods she purchased.  Plaintiff made those purchases without knowledge that the Sprout Baby Foods

contained heavy metals.  If Plaintiff had known that the Sprout Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Sprout Baby Foods.

27.    Plaintiffs have provided pre-suit notice to Sprout regarding the wrongful conduct described herein and in response, Sprout has refused to provide any of the relief that is now being requested.

28.    Defendant Sprout Foods, Inc. is a Delaware corporation with its principal place of business located at 50 Chestnut Ridge Road, Montvale, New Jersey 07645.  Sprout develops, manufactures, markets and sells foods and snacks for infants and toddlers.[8]

## FACTUAL ALLEGATIONS

### A.  Sprout Foods

29.    Sprout has sold and continues to sell a variety of foods and snacks.  Until recently, Sprout attempted to distinguish itself from other food brands by holding itself out as only selling the healthiest, organic foods on the market.[9]



---

[8] https://sproutorganics.com/pages/about.

[9] https://web.archive.org/web/20210418090238/https://shop.sproutorganicfoods.com/.

30.     In fact, Sprout made a "Commitment"[10] to caregivers that its foods are made only with:



31.     Sprout foods were divided into "stages" that are geared toward different age children.[11]



32.     Sprout represented that its "Stage 2" foods, for children 6 months and older, contain very few, organic ingredients.[12]

33.     Sprout's "Stage 3" foods, for children 8 months and older, were marketed as

---

[10] *Id.*

[11] *Id.*

[12]
https://web.archive.org/web/20210418073733/https://shop.sproutorganicfoods.com/collections/stage-2.

11

"nutrient-dense," "organic" and containing "free-range" and "pasture-raised" sources of protein.[13]

34.      Sprout claimed that its "Toddler" foods were "wholesome," "packed with essential nutrients your toddler needs including Protein, Fiber, Omega 3 for brain development, and a Full Serving of Fruits or Veggies!"[14]

35.      Finally, Sprout's "Snacks," for children 8 months and older, were marketed as having "been recognized by parents and industry experts for outstanding flavor, sustainable protein sources, and dedicated to clean, organic ingredients."[15]

36.      In fact, even Sprout's displays sent to retailers were designed to make consumers believe that Sprout Baby Food was healthy and "pure":



---

[13]

https://web.archive.org/web/20210418075320/https://shop.sproutorganicfoods.com/collections/stage-3.

[14]

https://web.archive.org/web/20210418082313/https://shop.sproutorganicfoods.com/collections/toddler-1.

[15]

https://web.archive.org/web/20210418075153/https://shop.sproutorganicfoods.com/collections/snacks.

37.     Such representations and warranties induced Plaintiffs and other consumers to believe that Sprout baby food products were safe and healthy and nutritious, wouldn't be contaminated by heavy metals, and purchased them as a result.  Notably, none of Sprout's packaging or marketing materials warned that its baby food products contained unsafe levels of dangerous toxic heavy metals that could harm the health and physiological and neurocognitive development, including brain development, of children consuming such baby food products.

38.     Sprout falsely represented and warranted the contents, ingredients, safety, and nutritional value of the baby food products because Sprout knew that Plaintiffs and similarly situated consumers would never have purchased the Sprout baby food products to be fed to their children if truthful information had been provided.

39.     Even after Sprout's rebranding efforts[16], Defendant continues to market Sprout Baby Foods as only using the "best, REAL and ORGANIC ingredients in everything we make. Always and forever. That means certified organic foods in every bite like Mother Nature intended. Nothing artificial. And no GMOs ever."[17]

40.     Yet, despite Sprout's new motto to "Keep It Real," Sprout still fails to disclose that Sprout Baby Foods contain elevated and unsafe levels of heavy metals.

41.     At all times, Sprout had a duty to provide only accurate and truthful representations, warranties, and information about its baby food products, and the aforesaid conduct breached that duty.  As a result, Plaintiff and those similarly situated were economically harmed.

**B.  The House Report**

42.     The House Report concluded that baby food products contained unsafe levels of

---

[16] https://sproutorganics.com/blogs/main/fresh-new-look.

[17] https://sproutorganics.com/pages/about.

toxic heavy metals including arsenic, lead, cadmium, and mercury."

43.    The House Report describes the background and genesis of the Subcommittee's investigation.  On November 6, 2019, having been made aware of reports of high levels of toxic heavy metals in baby foods, the Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food products in the United States, including Sprout.[18]

44.    Four of the companies responded to the Subcommittee's requests, while three of the companies, including Sprout, failed to cooperate.[19]

45.    Of the four companies that cooperated with the Subcommittee investigation, the House Report found that Arsenic, Lead and Cadmium was contained in the food of all four companies.  Additionally, only one of the four companies tested its foods for Mercury, and that company confirmed that its foods did contain Mercury.[20]

46.    The Subcommittee expressed "grave concerns about baby food products manufactured by…Sprout Organic Foods…[which] refused to cooperate with the Subcommittee's investigation."  Specifically, the Subcommittee was "greatly concerned that [Sprout's] lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products."[21]

47.    The Subcommittee advised that despite "numerous emails to executives and its general information email address, as well as numerous attempts to reach the Sprout central office by telephone, Sprout never responded or made contact with the Subcommittee."[22]

---

[18] House Report at 2.

[19] Id.

[20] Id. at 3-4.

[21] Id. at 5.

[22] Id. at 46.

48.     The Subcommittee stated that "[w]hether due to evasion or negligence, Sprout's failure to respond raises serious concerns about the presence of toxic heavy metals in its baby foods, as even limited independent testing has revealed the presence of toxic heavy metals in its products."[23]

### C. Supplemental House Report

49.     On September 29, 2021, the House Subcommittee issued a new report titled "New Disclosures Show Dangerous Levels of Heavy Metals in Even More Baby Foods" (hereinafter referred to as the "Supplemental House Report").[24]

50.     This supplemental report provided particularly negative commentary from the House Subcommittee towards Sprout.

51.     For example, the Subcommittee commented that "[t]he handful of documents that Sprout provided displayed a lax approach to testing for toxic heavy metals in its baby foods."[25]

52.     In fact, Sprout only tested its products ingredients once a year:[26]

> Based on the Subcommittee's study of the baby food industry, the testing practices of Sprout appear to be the most reckless among baby foods sellers on the market. For comparison, Beech-Nut tested its ingredients 1,745 times between September 2016 and November 2019, including 807 tests of a single ingredient: pears.[27]

53.     Moreover, the subcommittee also determined that Sprout's use of ingredient only testing is woefully inadequate:

---

[23] *Id.*

[24] *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf.

[25] Supplemental House Report at 2.

[26] Supplemental House Report at 17.

[27] Supplemental House Report at 17-18.

The Subcommittee's staff reports have demonstrated the clear danger in allowing industry to test only its ingredients and not its finished products for toxic heavy metals. Ingredient testing regularly leads to underestimation of toxic heavy metal levels. Baby food manufacturers should be required by FDA to test their finished products for toxic heavy metals, not just their ingredients.[28]

**D.** **Independent Testing Supports That Sprout Baby Foods Contain Heavy Metals, Which Have Significant Negative Effects on Child Development**

54.     In October 2019, Happy Babies Bright Futures released a report titled "What's in my baby's food?" ("HBBF Report")[29]

55.     The HBBF Report details a sprawling investigation in which it tested a variety of different baby foods from most of the leading baby food manufacturers, including Sprout.[30]

56.     The HBBF Report detailed its testing results[31] of numerous Sprout baby foods and found the presence arsenic, lead, cadmium and mercury in many of them:

| Brand | Food | Food type | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) |
|-------|------|-----------|---------------------|--------------------------|-----------|---------------|----------------------|
| Sprout | Organic Quinoa Puffs Baby Cereal Snack - Apple Kale | Snack - puffs, contains rice | 107 | 47 | 39.3 | 41.5 | 1.31 |
| Sprout | Prunes Organic Baby Food - 1 starting solids | Fruit - single - prune | 3.9 * | -- | 6.1 | < 0.5 | 0.245 * |
| Sprout | Carrot Apple Mango Organic Baby Food - 2, 6 months & up | Fruit and veggie - mixed | 6.1 | -- | 2.1 | 15.1 | < 0.131 |
| Sprout | Garden Vegetables Brown Rice with Turkey - for 8 months & up, Stage 3 | Meal | 7.2 | -- | 1.6 * | 2.5 | < 0.138 |

57.     Plaintiffs' Counsel also had various Sprout Baby Food tested with the following results:

---

[28] Supplemental House Report at 25.

[29] https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf.

[30] Id.

[31] Id.

| Food Item | Arsenic (PPB) | Cadmium (PPB) | Lead (PPB) |
|---|---|---|---|
| Sprout Stage 2: Carrot Apple Mango | 2.7 | 5.7 | 1.0 |
| Sprout Organic Wafflez Blueberry Apple | 5.4 | 12.1 | 3.9 |
| Sprout Organic Curlz White Cheddar | 74 | 6.3 | 3.1 |
| Sprout Organic Wafflez Pumpkin Butter & Jelly | 2.8 | 10.4 | 3.6 |
| Sprout Organic Crinklez Pumpkin & Carrot | 60.8 | 15.4 | 14.9 |
| Sprout Organic Veggie Power: Sweet Potato with mango, apricot & carrot | 2.7 | 8.6 | 2.2 |
| Sprout Stage 2: Mixed Berry Oatmeal | * | 11.2 | 1.8 |

58.     Other Sprout baby foods that were tested did not contain elevated and unsafe levels of heavy metals.

59.     Additionally, Consumer Reports conducted testing of selected samples of baby food products sold by Defendant and other baby food manufacturers. Every product had measurable levels of at least cadmium, arsenic, or lead.  According to Consumer Reports, "[a]bout two-thirds (68 percent) had worrisome levels of at least one heavy metal" and "[o]rganic foods were as likely to contain heavy metals as conventional foods."[32]

60.     In fact, Consumer Reports listed Sprout Garden Vegetables Brown Rice With Turkey Organic Baby Food as a food of "more concern" with heavy metal levels that mean less than one serving per day should be consumed.[33]

61.     Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their

---

[32] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last visited Nov.1, 2021).

[33] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food-a6772370847/.

children. This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

62.     One example of harmful substances parents want to avoid exposing their children to are the heavy metals arsenic, lead, mercury, and cadmium. These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure of function of the nervous system."[34] Exposure to these neurotoxins have been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[35]

63.     Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[36] Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[37] These developmental conditions can be caused by exposure to even trace amounts of these substances.[38]

64.     For these reasons, organizations such as the FDA and WHO have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who

---

[34] *Neurotoxin*, https://www.britannica.com/science/neurotoxin (last visited Nov.1, 2021).

[35] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), https://www.healthybabyfood.org/sites/ (last visited Nov. 1, 2021). healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (accessed Nov. 1, 2021); HBBF Report, at 13.

[36] HBBF Report, at 1.

[37] HBBF Report, at 6.

[38] HBBF Report, at 1.

are most vulnerable to their neurotoxic effects."[39] Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[40]

65.    According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, "No level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."[41]

66.    Because heavy metals accumulate in the body, including in the kidneys and other internal organs, the risk they pose grows over time and can remain in one's body for years.[42]  Due to their smaller physical size and still-developing brain and organs, infants and toddlers are particularly susceptible to the toxic effects of heavy metals because "[t]hey also absorb more of the heavy metals that get into their bodies than adults do."[43]

67.    Because heavy metals can bioaccumulate in the body, even regular consumption of small amounts can increase the risk of various health issues, including the risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes.[44]

68.    Exposure to heavy metals, even in small amounts, can lead to life-long effects.

---

[39] House Report, at 2.

[40] House Report, at 3.

[41] Some Baby Food May Contain Toxic Metals, U.S. Reports; available at

https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html?.?mc=aud_dev&ad-keywords=auddevgate&gclid=CjwKCAjwoP6LBhBlEiwAvCcthLsjFNUpcAIGQNXQp1J5y77uMg9TJwA5mlVCYeiYkxiuadXD0IDwHxoC0xkQAvD_BwE&gclsrc=aw.ds.

[42] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.

[43] Id.

[44] Id.

According to Victor Villarreal, Ph.D., Assistant Professor in the Department of Educational Psychology at the University of Texas at San Antonio who has studied the effects of heavy metals on childhood development, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[45]

### Arsenic

69.      The heavy metal arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[46] The effects of arsenic exposure are irreversible and in addition to the cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[47]

70.      Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and FDA to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has set a limit of 10 parts per billion ("PPB") for apple juice, and the EPA has set the same limit for drinking water. Additionally, the FDA has set a limit of 10 parts per billion for bottled water[48] and is considering limiting the action level for

---

[45] *Id.*

[46] HBBF Report, at 13.

[47] House Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013), https://pubmed.ncbi.nlm.nih.gov/23570911/).

[48] Laura Reiley, *New Report Finds Heavy metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/.

arsenic in rice cereals for infants to 100 ppb.[49] The FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[50]

### Lead

71.    Exposure to the heavy metal lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[51] Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[52]

72.    For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[53] Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[54]

73.    The proven negative effects of lead exposure have caused several health organizations—including the American Academy for Pediatrics, the Environmental Defense Fund,

---

[49] FDA, *Guidance for Industry: Action Level for  Inorganic Arsenic in Rice Cereals for Infants* (Aug. 2020), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-inorganic-arsenic-rice-cereals-infants.

[50] *See, e.g.,* "Federal judge enters consent decree against Washington state judice processor (June 15,2021), https://www.fda.gov/news-events/press-announcements/federal-judge-enters-consent-decree-against-washington-state-juice-processor.

[51] House Report, at 11.

[52] HBBF Report, at 13.

[53] HBBF Report, at 13.

[54] House Report, at 12 (citing Gabriele Donzelli *et al.*, *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019), http://www.mdpi.com/1660-4601/16/3/382/htm).

and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb[55] and "[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[56]

### **Mercury**

74.    The WHO warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[57]

75.    It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their brains and kidneys are still developing[58] and that exposure to even a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[59]  For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention span and cause learning disabilities."[60]

76.    Exposure to mercury has also been linked to higher risk of lower IQ scores and intellectual disability in children[61] and mercury exposure at two and three years of age has been positively associated with autistic behaviors among preschool-age children.[62]

---

[55] Laura Reiley, *New Report Finds Heavy metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/.

[56] *Id.*

[57] *Id.*

[58] Missouri Dept. of Nat. Resources, *Mercury,* https://health.mo.gov/living/environment/mercury/.

[59] *Mercury and health*, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%E2%80%93%20even%20small,%2C%20kidneys%2C%20skin%20and%20eyes.

[60] Missouri Dept. of Nat. Resources, *Mercury* https://health.mo.gov/living/environment/mercury/.

[61] HBBF Report, at 14.

[62] House Report, at 12-3.

77.     The EPA has set a maximum mercury level in drinking water to 2 ppb.[63]

**Cadmium**

78.     The heavy metal cadmium is considered a neurotoxin. Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting and diarrhea, and sometimes death. Eating lower levels of cadmium over a long period can lead to kidney damage and can cause bones to become fragile and break easily. Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers. The US Department of Health and Human Services ("HHS") and the EPA, both consider cadmium and cadmium compounds human carcinogens (can cause cancer).[64]

79.     Children with higher cadmium levels are three times more likely to have learning disabilities and participate in special education, according to a new study led by Harvard University researchers.[65]

80.     The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[66]

**E.   Sprout's Knowledge of and Failure to Disclose
       Heavy Metal Contamination in its Foods**

81.     Despite the known and knowable risks of exposure to these heavy metals, Sprout negligently, recklessly, and/or knowingly sold its baby food products containing dangerous heavy

---

[63] House Report, at 32.

[64] NYS Dept. of Health, *Cadmium in Children's Jewelry*, https://www.health.ny.gov/environmental/chemicals/cadmium/cadmium_jewelry.htm#:~:text=Children%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry.

[65] Marla Cone, *Is Cadmium as Dangerous for Children as Lead?*, SCIENTIFIC AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/.

[66] House Report, at 29.

metals, and without disclosing a warning to Plaintiff and those similarly situated.

82.     At all times relevant, Sprout knew or should have known the contents of its baby food products. Sprout also knew or should have known the contents of ingredients supplied by suppliers for inclusion in the baby food products, including the presence of dangerous heavy metals.

83.     Sprout tests the component ingredients and knew or should have known of the presence of dangerous heavy metals.  Sprout recklessly and with willful and wanton disregard of the rights and health of the those who purchased and consumed its baby food products, disregarded the unreasonable risks created by the presence of heavy metals in its baby food, and failed to adequately inform or warn Plaintiff and those similarly situated.

84.     The October 2019, the HBBF Report notified Sprout of the presence of unacceptable, dangerous levels of heavy metals in their baby food products.[67]  Even after being notified in this manner, Sprout failed to take adequate measures to sell baby food products without unsafe levels of heavy metals, or to adequately warn consumers.

85.     Despite Sprout's knowledge of heavy metal contamination in its baby food products, Sprout failed to take action to change or adjust the design, manufacturing, or marketing of its baby food products, including the failure to provide adequate warnings about the heavy metal contamination to Plaintiff and other similarly situated consumers.

86.     Sprout's marketing of its baby food products without any warning indicating that these products contain heavy metals, or that these toxins can accumulate in a child over time to the point where poisoning, injury, and/or disease can occur, was reckless, and undertaken with willful and wanton disregard of Plaintiff and those similarly situated.

---

[67] http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

87.    Sprout's misrepresentations and untrue warranties regarding the safety, ingredients, and nutritional value of their baby food products, as well as its omissions and failure to warn about the presence of toxic heavy metals were material, false, misleading, and intended to be and were reasonably likely to deceive the public, including Plaintiff and those similarly situated. This is true especially considering Sprout's long-standing marketing of its baby food products as "wholesome," "organic," "clean," "pure" and "packed with essential nutrients your toddler needs."

88.    These representations and "commitments" make Sprout's marketing and labeling deceptive, affirmatively representing an inaccurate list of ingredients and safety and nutrition information, and failing to disclose the presence of heavy metals in its baby food products. Reasonable consumers, including Plaintiff and those similarly situated, were unaware of the presence of unsafe levels of heavy metals in Sprout's baby food products, and would not have purchased Sprout's baby food products if they had known the true list of ingredients including the heavy metals.  Sprout's above-referenced statements, representations, warranties, and omissions were false, misleading, and intended to deceive the public, including Plaintiff and those similarly situated.  Plaintiff and those similarly situated were deceived by the marketing images representing and warranting that Sprout foods are healthy, safe, high-quality, contain only the listed ingredients, and not disclosing the inclusion of heavy metals such as arsenic, cadmium, lead and mercury. Sprout also knew but disregarded the fact that Plaintiff and those similarly situated would deem the presence of heavy metals in its baby food products to be material in selecting baby food products for purchase and to be fed to their children.

89.    Sprout also knew or should have known that Plaintiff and similarly situated consumers would be feeding the Sprout baby food products to their children regularly, including multiple times each day, and that this repeated ingestion would cause and exacerbate the build-up

of the heavy metals in their children.

90.     As a result of the aforesaid wrongdoing, Sprout has generated substantial sales and profits from the sale of its baby food products to Plaintiff and those similarly situated. These sales would not have occurred if Sprout had provided accurate information.

## RULE 9(B) ALLEGATIONS

91.     To the extent necessary, as detailed in the paragraphs above and below, Plaintiff have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

a.  WHO:  Sprout Foods, Inc., acting through its employees and agents, made material misrepresentations and omissions of fact in the sale, marketing, advertising, and promotion of its Sprout baby food products.

b.  WHAT: Sprout Foods, Inc., made material misrepresentations and omissions by marketing, advertising, promoting, and selling its baby food products as containing listed ingredients and nutritional benefits, and using materially misleading and false terminology to describe the contents, including but not limited to: "wholesome," "organic," "clean," and "packed with essential nutrients your toddler needs." Such representations and warranties were deceptive and misleading because Sprout baby food products contained toxic heavy metals that pose a danger to the health and safety of babies and children when ingested. Sprout failed to inform consumers that its baby food products contained or had a risk of containing unsafe levels of heavy metals, including cadmium, arsenic, lead, and mercury. Plaintiff and similarly situated reasonable consumers expected that baby food products, and in particular those marketed as premium, organic and all-natural, would not contain dangerous levels of undisclosed heavy metals, and this was known to Sprout. Sprout failed to inform Plaintiff

and similarly situated consumers that Sprout baby food products contained heavy metals because Sprout intended for them to believe that its baby food products were safe and healthy and posed no unreasonable safety risks to children.  Indeed, Sprout knew that its representations and warranties and omissions rendered the contents of the packages, labels, and marketing, advertising, and promotions false, because the baby food products contained unsafe levels of heavy metals.

c.  WHERE:  The misrepresentations and material omissions were on Sprout baby food product packages, labels and marketing, advertising, and promotions.  These misrepresentations and material omissions were included on the products themselves, which failed to disclose the presence of heavy metals.

d.  WHEN:  Sprout made the material misrepresentations and omissions every time its baby food products were sold, marketed, advertised, and promoted.

e.  WHY:  Knowing that consumers would not purchase baby food products containing unsafe levels of heavy metals, or the disclosed risk of containing unsafe levels of heavy metals, Sprout intentionally failed to inform consumers that Sprout baby food products contained, or risked containing unsafe levels of heavy metals.  Sprout took these actions in order to profit from the sale of its baby food products despite the health risks they posed, placing profits ahead of safety.

f.  HOW:  Sprout made material misrepresentations and failed to disclose material facts concerning the presence of unsafe levels of heavy metals in its baby food products by representing false and incomplete lists of ingredients and nutritional information, and descriptions of the baby food products as safe and healthy both directly and through the terminology utilized as aforesaid, and failing to inform consumers that they contained

unsafe levels of heavy metals.

## TOLLING AND ESTOPPEL

### A.    Discovery Rule Tolling

92.     Plaintiffs and the Classes had no way of knowing about Defendant's conduct with respect to the presence of heavy metals in Sprout's products.

93.     Neither Plaintiffs nor any other members of the Classes, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and members of the Classes did not discover and did not know of facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein.

94.     For these reasons all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs and the Classes.

### B.    Fraudulent Concealment Tolling

95.     By failing to provide notice of the presence of heavy metals in the products, Sprout concealed their conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Classes.

96.      Upon information and belief, Sprout intended their acts to conceal the facts and claims from Plaintiffs and members of the Classes. Plaintiffs and the members of the Classes were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes should be tolled.

## CLASS ACTION ALLEGATIONS

97.     Pursuant to Rule 23(a) and (b)(3), Plaintiffs bring this action on behalf of a proposed classes defined as follows:

**The Nationwide Class.** All persons who purchased Sprout Baby Foods in the United States within the Class Period.

Excluded from the Nationwide Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

98.     Plaintiff Kimca (the "Connecticut Plaintiff") also seeks certification of the following

Class (the "Connecticut Class"):

All persons residing in **Connecticut** who purchased Sprout Baby Foods within the Class Period.

99.     Plaintiff Sampson (the "Illinois Plaintiff") also seeks certification of the following

Class (the "Illinois Class"):

All persons residing in **Illinois** who purchased Sprout Baby Foods within the Class Period.

100.     Plaintiffs Tomko, Ortiz and Wynn (the "New Jersey Plaintiffs") also seek

certification of the following Class (the "New Jersey Class"):

All persons residing in **New Jersey** who purchased Sprout Baby Foods within the Class Period.

101.     Plaintiff Wardale (the "Texas Plaintiff") also seeks certification of the following

Class (the "Texas Class"):

All persons residing in **Texas** who purchased Sprout Baby Foods within the Class Period.

102.     Plaintiff Cornett (the "New York Plaintiff") also seeks certification of the following

Class (the "New York Class"):

All persons residing in **New York** who purchased Sprout Baby Foods within the Class Period.

103.     Plaintiff Cornett (the "Georgia Plaintiff") also seeks certification of the following

Class (the "Georgia Class"):

> All persons residing in **Georgia** who purchased Sprout Baby Foods within the Class Period.

104.    Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure,

Plaintiffs bring this action on behalf of a proposed class defined as follows:

> **The Injunctive Relief Class.** All persons in the United States who purchased, or incurred damages by using, the Sprout Baby Foods. Plaintiffs ask the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class.

> The Injunctive Relief Class does not seek any form of monetary relief. Excluded from the Injunctive Relief Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

105.    Plaintiffs reserve the right to alter the Class definitions as they deem necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, and applicable precedent allow.

106.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

107.    <u>Numerosity - Rule 23(a)(1):</u> The size of the Nationwide Class and each of the state Classes is so large that joinder of all Class members is impracticable. Due to the nature of Defendant's business, Plaintiffs believe there are thousands of Class members geographically dispersed throughout the United States and hundreds or thousands of Class members in each state.

108.    <u>Existence and Predominance of Common Questions of Law and Fact - Rule</u>

23(a)(2), (b)(3): There are questions of law and fact common to the Nationwide Class and each of

the state Classes. These questions predominate over any questions affecting only individual Class

members. Common legal and factual questions include but are not limited to:

     a. whether Defendant sold Sprout Baby Foods that had detectable levels of heavy metals;

     b. whether Defendant advertised, represented, or held itself out as producing or manufacturing Sprout Baby Foods that were safe for infants and children to consume;

     c. whether Defendant expressly warranted the Sprout Baby Food;

     d. whether Defendant purported to disclaim any express warranty;

     e. whether Defendant purported to disclaim any implied warranty;

     f. whether any limitation on warranty fails to meet its essential purpose;

     g. whether Defendant intended for Plaintiffs, the Class members, and others to purchase the Sprout Baby Food;

     h. whether Defendant intended or foresaw that Plaintiff, the Class members, and others would feed the Sprout Baby Foods to their children;

     i. whether and in what manner Defendant were negligent in manufacturing or processing the Sprout Baby Food;

     j. whether Defendant's negligence proximately caused loss, injury, or damages to the Class members;

     k. whether the Class members suffered damages;

     l. whether the Class members are entitled to actual or other forms of damages and other monetary relief; and

     m. whether the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

109.   Defendant engaged in a common course of conduct in contravention of the laws

Plaintiffs seek to enforce individually and on behalf of the Class members. Similar or identical

violations of law, business practices, and injuries are involved. Individual questions, if any, pale by

comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will substantially advance the resolution of the case.

110.    Typicality - Rule 23(a)(3): Plaintiffs' claims are typical of the claims of the members of the Nationwide Class and each of the state Classes because Defendant injured all Class members through the uniform misconduct described herein; all Class members suffered injury due to Defendant's defective Sprout Baby Food; and Plaintiffs seek the same relief as the Class members. Furthermore, there are no defenses available to Defendant that are unique to Plaintiffs.

111.    Adequacy of Representation - Rule 23(a)(4): Plaintiffs are fair and adequate representatives of the Nationwide Class and each of the state Classes because Plaintiffs' interests do not conflict with the Class members' interests. Plaintiffs will prosecute this action vigorously and are highly motivated to seek redress against Defendant. Furthermore, Plaintiffs have selected competent counsel who are experienced in class action and other complex litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

112.    Superiority - Rule 23(b)(3): The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

    a.    The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

    b.    Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members

themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c.      The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.

d.      The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

113.    Notice: Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

i.      This lawsuit presents no logistical or other practical difficulties that would impede its management by the Court as a class action; and

ii.     Defendant have acted on grounds generally applicable to Classes,

making class-wide monetary and injunctive relief appropriate and feasible.

       b.     Class members are ascertainable through the use of purchase records, reward and/or membership programs, and the possession of Sprout Baby Foods themselves.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(On behalf of the National Class and, alternatively, each State Class)**

108.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

109.    Plaintiffs bring this claim individually and on behalf of the Classes.

110.    Defendant was provided with several pre-suit notices regarding their breach of warranties and failed to respond or take any action to cure such breaches.

111.    Sprout falsely represented and warranted that Sprout baby food products were safe, healthy, contained specific ingredients, and were nutritious products to feed to babies and children, utilizing terminology including, but not limited to "wholesome," "organic," "clean," "packed with essential nutrients your toddler needs," "healthy," and with lists of ingredients listed on their packages and labels.  Each of these statements constitutes an affirmation of fact.

112.    However, the Sprout Baby Foods are not in fact safe and healthy and do not contain only the ingredients listed on their labels because they contain heavy metals.

113.    The inclusion of elevated levels of heavy metals is material because elevated levels of these toxins rendered Sprout Baby Foods dangerous, presenting a significant, unreasonable risk of physical and cognitive harm, and thus rendering Sprout Baby Foods worthless.  Plaintiffs and those similarly situated would not have purchased the Sprout Baby Foods in the absence of these false and misleading representations and warranties, and/or if the true facts had been disclosed.

114.    Defendant's representations regarding the ingredients in Sprout Baby Foods

related to the goods and became part of the basis of the bargain between Defendant and Plaintiffs and similarly situated purchasers of Sprout Baby Foods.

115.    Plaintiffs and members of the Classes purchased Sprout Baby Foods because they relied on and believed that they conformed to the express warranties.

116.    As set forth herein, Defendant's statements concerning the safety, health benefits, and ingredients in Sprout Baby Foods were false and materially misleading.

117.    All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiffs and the other members of the Classes.

118.    As a result of Defendant's breaches of its express warranties, Plaintiffs and the other members of the Classes were damaged in the amount of the purchase price they paid for Sprout Baby Food, which they would not have otherwise paid, in amounts to be proven at trial.

119.    Defendant was on notice that Sprout Baby Foods contained elevated levels of heavy metals, that the presence of these toxins was contrary to and breached Defendant's express warranties, and that Plaintiffs and similarly situated class members would be and actually were damaged as a result.

120.    As a proximate result of the breach of warranties by Defendant, Plaintiffs and the other members of the Classes did not receive goods as warranted.  Among other things, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed herein.  Had Plaintiffs and the members of the Classes known the true facts, they would not have purchased the subject Sprout Baby Foods.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**AND FITNESS FOR A PARTICULAR PURPOSE**
**(On behalf of the National Class and, alternatively, each State Class)**

121.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

122.    Plaintiffs brings this claim individually and on behalf of the Classes.

123.    Defendant was provided with several pre-suit notices regarding their breach of warranties and failed to respond or take any action to cure such breaches.

124.    Defendant knew that the purpose for which consumers purchased Sprout Baby Foods was to provide safe, healthy and nutritious foods to their children, containing only the ingredients represented on the packages, labels, marketing, advertising, and promotions.

125.    Sprout knew that Plaintiffs and similarly situated consumers trusted and relied on the accuracy of the marketing and labeling for the Sprout Baby Foods, and that Sprout was supplying baby food that was safe and suitable for consumption by their children.

126.    Plaintiff and members of the Classes relied on Sprout to not include unsafe ingredients such as unsafe levels of heavy metals in its baby food products; had they known, or even suspected, that Defendant's foods were contaminated with unsafe levels of heavy metals, they would not have purchased the subject foods.

127.    Plaintiff and members of the Classes were injured because Sprout Baby Foods were not fit for the particular purpose for which they were purchased, namely to provide safe, healthy and nutritious food to be fed to their children.

128.    As a proximate result of the breach of implied warranties by Defendant, Plaintiffs and the other members of the Classes did not receive merchantable goods that were fit for their intended purpose.  Among other things, Plaintiffs and members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed above.  Had Plaintiffs and the members of the Classes known the true facts, they would not have purchased the subject Sprout Baby Foods.

## COUNT III
## NEGLIGENT MISREPRESENTATION
**(On behalf of the National Class and, alternatively, each State Class)**

129.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

130.    Plaintiffs bring this claim individually and on behalf of the Classes.

131.    Defendant owed a duty to Plaintiffs and the Classes to exercise reasonable and ordinary care in the formulation, design, testing, manufacture, packaging, labeling, marketing, advertising, promotion, distribution, and sale of Sprout Baby Foods.

132.    Defendant breached its duty to Plaintiffs and the Classes by designing, testing, formulating, manufacturing, packaging, labeling, marketing, advertising, promoting, distribution, and sale of Sprout Baby Foods to Plaintiffs and the Classes, because Sprout Baby Foods contained elevated levels of heavy metals,  Sprout provided inaccurate and materially misleading information as to the ingredients, qualities, characteristics, and suitability for consumption of Sprout Baby Foods, and Defendant failed to remove the subject baby food products from the marketplace or to take other appropriate remedial action to protect the safety and health of the infants and children that Defendant knew would eat Sprout Baby Foods containing elevated levels of heavy metals.

133.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the foods were not as represented, marketed, advertised, or promoted, that Sprout Baby Foods were not suitable for their intended use of consumption by children, and were otherwise not as warranted and represented by Defendant.  Defendant knew or should have known that (1) Sprout Baby Foods were not nutritious, superior quality, healthy, and safe for consumption because they contained elevated levels of heavy metals that did not conform to the packaging, labeling, or other representations and statements of the ingredients and quality, safety, and nutritional value of Sprout Baby Foods; and (2) Sprout Baby Foods were otherwise not as represented and warranted

by Defendant.

134.    Defendant is in the business of supplying this information to Plaintiffs and similarly-situated consumers.

135.    As a direct and proximate result of Defendant's aforesaid conduct, Plaintiffs and the Classes have suffered actual damages in that they purchased Sprout Baby Foods that presented an unreasonable risk of harm and that were thus worthless.  Plaintiffs and the similarly situated members of the Classes would not have purchased Sprout Baby Foods at all in the absence of the misrepresentations catalogued herein, and if they had been provided accurate information, including that Sprout Baby Foods contained elevated levels of heavy metals.

## COUNT IV
## FRAUD
### (On behalf of the National Class and, alternatively, each State Class)

136.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

137.    Plaintiffs bring this claim individually and on behalf of the Classes.

138.    Defendant made material misrepresentations and omissions concerning a presently existing or past fact.  Defendant intentionally failed to fully and truthfully disclose to Plaintiffs and similarly situated consumers the true list of ingredients in Sprout Baby Foods, and the true safety, nutritional value, and risks of eating Sprout Baby Foods, which was not readily discoverable until this information was recently made public on a widescale basis through the House Report.  As a result, Plaintiffs and the other members of the Classes relied on the false and misleading information provided by Sprout, and were thus fraudulently induced to purchase the Sprout Baby Foods containing elevated levels of heavy metals.

139.    Defendant's affirmative misrepresentations and omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and other members

of the Classes would rely on them.

140.    Plaintiffs and other members of the Classes reasonably relied on these statements and omissions and suffered damages as a result.

## COUNT V
## UNJUST ENRICHMENT
**(On behalf of the National Class and, alternatively, each State Class)**

141.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

142.    Plaintiffs brings this claim individually and on behalf of the Classes.

143.    This cause of action is pled in the alternative to the other claims.

144.    Plaintiffs and those similarly situated conferred a tangible economic benefit upon Defendant by purchasing the Sprout Baby Foods.  Defendant appreciated those economic benefits in the form of increased sales and revenue.  Plaintiffs and those similarly situated would not have purchased the Sprout Baby Foods had they known that they contained elevated levels of heavy metals.

145.    By engaging in the conduct described above, Defendant were unjustly enriched and received a benefit beyond what was contemplated by the parties, at the expense of Plaintiffs and those similarly situated.

146.    It would be unjust and inequitable for Defendant to retain the payments Plaintiffs and those similarly situated made for the Sprout Baby Foods.

147.    By reason of the foregoing, Defendant are liable to Plaintiffs and members of the Classes for the economic harm that they have suffered as a result of Defendant's actions, the amount of which shall be determined at trial.

## COUNT VI
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT,
### N.J.S.A. 56:8-1 *et seq*.
**(On behalf of the National Class and, alternatively, the New Jersey Class)**

148.   Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

149.   Plaintiffs brings this claim individually and on behalf of the Classes.

150.   The New Jersey Consumer Fraud Act prohibits, *inter alia*:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

151.   Defendant's misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of elevated levels of heavy metals in Sprout Baby Food, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of baby food products in violation of the New Jersey Consumer Fraud Act.

152.   Defendant's false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase Sprout Baby Foods.

153.   Defendant failed to inform consumers that Sprout Baby Foods contained elevated levels of heavy metals.  That information would have been material to any consumer deciding whether to purchase Sprout Baby Foods.

154.   Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiffs and similarly situated Class members reasonably believed that Sprout Baby Foods did not contain any heavy metals, much less elevated levels of heavy metals, and were induced into purchasing Sprout Baby Foods by these misrepresentations and omissions.

155.    Upon information and belief, Defendant's misrepresentations and omissions were created, approved, and implemented from its New Jersey headquarters.

156.    Plaintiffs and the other members of the Classes suffered an ascertainable loss as a direct and proximate result of Defendant's actions in violation of the New Jersey Consumer Fraud Act.

157.    Because of Defendant's wrongful actions, Plaintiffs and the other members of the Class suffered an ascertainable monetary loss based on and measured by the price they paid for Sprout Baby Food, which they would not have paid in the absence of the aforesaid wrongdoing.

158.    Plaintiffs and other members of the Class suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have purchased Sprout Baby Foods if the true facts concerning elevated levels of heavy metals had been known.

159.    The difference in value between the Sprout Baby Foods promised and the Sprout Baby Foods received can be reasonably quantified.

160.    Defendant's sale of Sprout Baby Foods containing elevated levels of heavy metals for consumption by infants and children was unconscionable, and the misrepresentations and omissions Defendant made about Sprout Baby Foods were made for the sole purpose of inducing consumers to purchase Sprout Baby Foods to feed to their infants and children irrespective of any health consequences.  Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the health, safety, and well-being of infants and children eating Sprout Baby Foods.  Defendant is therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

161.    By reason of the foregoing, Defendant is liable to Plaintiffs and the other members of the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of

this suit.  N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

## COUNT VII
### VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 Ill. Comp. Stat. §§ 505, *et seq.* (On behalf of the Illinois Class)

162.    The Illinois Plaintiff identified above, individually and on behalf of the Illinois Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

163.    Defendant is a "person" as defined by 815 Ill. Comp. Stat. § 505/1(c).

164.    The Illinois Plaintiff and Class members are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e).

165.    Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).  Defendant's conduct is described in full detail above.

166.    Defendant's conduct constitutes deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2.

167.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

168.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

169.    As a direct and proximate result of Defendant's deceptive acts and practices, Illinois Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including

from not receiving the benefit of their bargain in purchasing Sprout Baby Foods.

170.    The Illinois Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

<u>COUNT VIII</u>
**VIOLATIONS OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**815 Ill. Comp. Stat. §§ 505, *et seq*.**
**(On behalf of the Illinois Class)**

171.    The Illinois Plaintiff identified above, individually and on behalf of the Illinois Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

172.    Defendant is a "person" as defined by 815 Ill. Comp. Stat. § 510/1(5).

173.    Defendant engaged in deceptive trade practices in the conduct of their business, in violation of 815 Ill. Comp. Stat. § 510/2(a) by making misrepresentations and false statements concerning the qualities of Sprout Baby Foods.

174.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

175.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Illinois Plaintiff and Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

176.    As a direct and proximate result of Defendant's deceptive acts and practices, Illinois Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Sprout Baby Foods.

177.    The Illinois Plaintiff and Class members seek all monetary and non-monetary relief

allowed by law, including injunctive relief and reasonable attorney's fees

**COUNT IX**
**VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER**
**PROTECTION ACT,**
**Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.***
**(On behalf of the Texas Class)**

178.    The Texas Plaintiff identified above, individually and on behalf of the Texas Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

179.    Defendant is a "person," as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

180.    The Texas Plaintiff and the Class members are "consumers," as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

181.    Defendant advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

182.    Defendant engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code Ann. § 17.46(b) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, if they are of another; and advertising goods or services with intent not to sell them as advertised.

183.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

184.    Defendant engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

44

185.     Consumers, including Texas Plaintiff and Class members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Defendant.

186.     As a direct and proximate result of Defendant's deceptive acts and practices, Texas Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Sprout Baby Foods.

187.     Defendant's violations present a continuing risk to the Texas Plaintiff and Class members as well as to the general public.

188.     Defendant were sent notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning their wrongful conduct as alleged herein by Texas Plaintiff and Class members. Texas Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

### COUNT X
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW
### N.Y. Gen. Bus. Law §§ 349, *et seq.*
### (On behalf of the New York Class)

189.     The New York Plaintiff identified above, individually and on behalf of the New York Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

190.     Defendant engaged in deceptive acts or practices in the conduct of their business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

191.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

192.    Defendant acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded the New York Plaintiffs and New York Class members' rights.

193.    As a direct and proximate result of Defendant's deceptive acts and practices, New York Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Sprout Baby Foods.

194.    Defendant's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of New Yorkers who purchased and/or used Sprout Baby Foods.

195.    The above deceptive and unlawful practices and acts by Defendant caused substantial injury to the New York Plaintiffs and Class members that they could not reasonably avoid.

196.    New York Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

## COUNT XI
## VIOLATIONS OF GEORGIA FAIR BUSINESS PRACTICES ACT,
### GA. CODE §§ 10-1-390, *et seq.*
### (On behalf of the Georgia Class)

178.    The Georgia Plaintiff identified above, individually and on behalf of the Georgia Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

46

179.    The Georgia Fair Business Practices Act prohibits "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices." Ga. Code § 10 1-393(a).

180.    Defendant participated in unfair or deceptive trade practices that violated the Georgia Fair Business Practices Act as described below and alleged throughout the Complaint.

181.    Defendant knowingly and intentionally misrepresented and omitted material facts in connection with the sale the Sprout Baby Foods.

182.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Sprout Baby Foods.

183.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

184.    Defendant knew or should have known that its conduct violated the Georgia Fair Business Practices Act.

185.    Had Plaintiffs and the Georgia Class members known the truth about the Sprout Baby Foods, they would not have purchased them or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of Defendant's misconduct.

186.    Defendant owed Plaintiffs and the Georgia Class a duty to disclose the truth about the Sprout Baby Foods because Defendant: (a) possessed exclusive, specific and superior knowledge of the true risks of the Sprout Baby Foods; (b) intentionally concealed the foregoing from Plaintiffs and the Georgia Class; and/or (c) made incomplete representations regarding the

Sprout Baby Foods, while purposefully withholding material facts from Plaintiffs and the Georgia Class that contradicted these representations.

187.    Plaintiffs and the Georgia Class suffered monetary damages and ascertainable losses as a result of Defendant's conduct.

188.    Defendant's violations present a continuing risk to Plaintiffs and the Georgia Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

189.    Defendant is liable to Plaintiffs and the Georgia Class for actual damages, exemplary damages, equitable relief, attorneys' fees and costs. Ga. Code. § 10-1-399.

190.    Defendant do not maintain a place of business or keep assets in the state of Georgia thus obviating the need for any pre-suit notice.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendant as to each and every count, including:

a)   An Order certifying this action as a class action, with classes as defined above;

b)   An Order appointing Plaintiffs as class representatives and their counsel as class counsel, to represent the Classes, and requiring Defendant to bear the costs of class notice;

c)   An Order requiring Defendant to pay all actual, compensatory, and statutory damages permitted or required for the conduct set forth herein;

d)   An Order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice set forth or encompassed herein;

e)   An Order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading packaging, labeling, advertising, marketing, or promotion, or a violation of law;

f)   An Order enjoining Defendant from selling Sprout Baby Foods in any manner

suggesting or implying that they are healthy, organic, and/or safe for consumption, as long as they contain elevated levels of heavy metals;

g) An Order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing baby food products;

h) An Order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

i) An Order requiring Defendant to pay pre- and post-judgment interest;

j) An Order requiring Defendant to pay treble damages;

k) An Order requiring Defendant to pay punitive damages;

l) An Order awarding attorney's fees and costs, including the costs of pre-suit investigation; and

m) An Order providing for such further relief as the Court deems just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all counts and claims.

Dated:  December 20, 2021

/s/ Matthew R. Mendelsohn
Matthew R. Mendelsohn
Adam M. Slater
Julia S. Slater
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Phone: (973) 228-0391
mrm@mazieslater.com
aslater@mazieslater.com
jslater@mazieslater.com

Jonathan Shub
Kevin Laukaitis (*pro hac vice* forthcoming)
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033

Phone: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

Gary E. Mason (*pro hac vice* forthcoming)
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Phone: (202) 429-2290
gmason@masonllp.com

Jeffrey S. Goldenberg (*pro hac vice* forthcoming)
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8297
jgoldenberg@gs-legal.com

David C. Magagna Jr.
Charles E. Schaffer (*pro hac vice* forthcoming)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 191060
Phone: (215) 592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

Gary S. Graifman
Melissa R. Emert (*pro hac vice* forthcoming)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road
Montvale, NJ 07645
Phone: (845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com

*Attorneys for Plaintiff*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge the matter in controversy is the

not the subject of another action, pending arbitration or administrative proceeding in this District.

Dated: December 20, 2021

/s/ Matthew R. Mendelsohn
Matthew R. Mendelsohn
Adam M. Slater
Julia S. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391
*Attorneys for Plaintiff*